ALBERT C. LAUN, Plaintiff-Appellant, v. THE UNION ELECTRIC COMPANY OF MISSOURI, a Corporation, and THE NORTH AMERICAN COMPANY, a Corporation, Defendants-Respondents.—No. 38117.— 166 S. W. (2d) 1065.

Division Two, November 12, 1942.

Rehearing Denied, January 4, 1943.

*Clyde C. Cope* for appellant.

574

*Amandus Brackman* for respondent, The North American Company.

*Jacob M. Lashly, Clark M. Clifford* and *Lashly, Lashly, Miller & Clifford* for defendant-respondent, The Union Electric Company of Missouri.

BARRETT, C.—The question for decision is whether the facts set forth in Albert C. Laun's petition hypothesize the publication of false and defamatory matter under such circumstances as to constitute libel or, whether the facts he has stated and upon which

he relies instance a privileged publication and, therefore, do not state a cause of action.

From July 1, 1919, until March 1, 1940, Albert C. Laun was either an employee or an official of The Union Electric Company of Missouri and The Mississippi River Power Company. He says that during his service a part of his duty was to act as "lobbyist and legislative agent" for the defendants and their affiliates under the supervision of superior executive officials, especially Louis H. Egan and Frank J. Boehm, who in turn were under the control and management of a holding company, the defendant, North American Company. The holding company, its subsidiaries, and the defendant, Union Electric Company of Missouri, are alleged to own all the stock of and control Union Electric Company of Illinois and The Mississippi River Power Company. Laun states that in the performance of his work for his employers and superiors in these various companies he was provided with and handled large sums of money which he was "commanded and compelled . . . to deliver . . . to many different people . . . secretly," but that he rendered "secret and confidential reports of all his acts" and faithfully accounted to the defendants and all concerned for the disposition of the funds supplied. He says the purpose of the defendants and those concerned in his activities in compelling him to act secretly and deviously, as he did, was so that if the facts were ever truly disclosed to the public and The Securities and Exchange Commission then the defendants would be in a position to disclaim knowledge of his acts and compel him to bear all the consequent burdens and responsibility.

He states that the facts were finally disclosed to The Securities and Exchange Commission and then the defendants, Union Electric Company of Missouri and The North American Company, acting together communicated certain defamatory matter regarding him to The Mississippi River Power Company and The Union Electric Company of Illinois and caused those companies to publish it and thereby libel him. Specifically he charges "defendants, while acting jointly . . . wilfully, wrongfully, intentionally, unlawfully, wantonly, maliciously, and oppressively *caused The Mississippi River Power Company (and The Union Electric Company of Illinois) to repeat the aforesaid false, defamatory, slanderous, libelous and untrue statements concerning plaintiff . . . by incorporating them in a typewritten amended complaint which was . . . filed"* in the United States District Court for the Eastern District of Missouri.

The separate complaints filed in the United States District Court by The Mississippi River Power Company and The Union Electric Company of Illinois charged that the plaintiff, Laun, and Boehm and Funk, while employees and officers of the companies, entered into a conspiracy to and did fraudulently appropriate the companies' money to their own use. Laun and his associates were alleged to have appropriated their principals' money by causing lawyers and insur-

ance companies to submit "padded bills" for services and insurance which were paid and secretly "kicked-back" to Laun, Boehm and Funk. It was also alleged that they "padded" expense ▓▓▓ accounts and caused records to be falsified so as to conceal their appropriations. The purpose of the suits against Laun, Boehm and Funk was to secure an accounting of and judgment for the misappropriated funds.

Laun, in his libel petition, says that the allegations in the complaints in the District Court were false and defamatory and that the "*defendants,* (Union Electric Company of Missouri and The North American Company) *although not parties to said action in the District Court, in truth and in fact published and caused the filing of said amended complaint,*" and thereby published defamatory matter libelous of him.

From this brief narrative of Laun's petition it is obvious, as the defendants say, that his cause of action is founded upon the charge that the defendants were the authors of a libel and directed or caused it to be incorporated in pleadings, two complaints. The defendants' theory is that separate demurrers were properly sustained to his petition because he relies on defamatory matter, relevant to the cause and contained in pleadings filed in a court having jurisdiction, which is absolutely privileged and not actionable even though false and maliciously plead. The plaintiff's theory is of necessity that the defendants are not parties to the proceedings or suits in the District Court and in procuring someone else to publish the allegedly defamatory matters are not protected by the absolute privilege accorded litigants or parties to the cause.

▓▓▓ The law of defamation was evolved from a combination of judgments of the sovereigns' courts, which "consisted merely of a series of exceptions to entire license of speech," and an adaptation of the Roman law. And so, although the principle underlying the law of defamation, now and then, is that one's right to reputation is "an absolute right, to be respected at peril" subject only to the ability to justify the language used, it soon became apparent that the general rule of absolute liability or peril in language was too severe if applied in all events and under all circumstances and especially if applied "to those who, in the performance of public or private duty, or in the legitimate protection of private interests, find it necessary to make defamatory imputations." 3 Col. L. R. 547; 9 Col. L. R. 463-464.([1])

"The rule of absolute immunity is founded, then, upon the principle that on certain occasions it is indispensable, or at least advantageous, to the public interest that persons should speak freely

[1] Judge Van Vechten Veeder's articles in Volumes 3, 4, 9 and 10 of the Columbia Law Review on "The History of Defamation" and "Absolute Immunity In Defamation" are exhaustive classics on the development of the law of defamation.

and fearlessly, uninfluenced by the possibility of being brought to account in an action for defamation. . . . Absolute privilege has been conceded on obvious grounds of public policy to insure freedom of speech where it is essential that freedom of speech should exist." 9 Col. L. R. 465, 469; 1 Cooley, Torts, p. 524; 36 C. J., Sec. 203, p. 1238; Newell, Slander & Libel, Sec. 341. On these occasions the better public policy "regards the ends to be gained by permitting such statements as outweighing the harm which may be done to the reputation of others." 3 Restatement, Torts, p. 224.

Early in the development of the law of defamation privileged defamatory matter was divided into two general classes: (1) That which was absolutely privileged, and (2) that which was qualifiedly or conditionally (sometimes called quasi) privileged. 33 Am. Jur., Sec. 124; Odgers, Libel & Slander, p. 227; Townshend, Slander & Libel, Sec. 209, p. 296. We are here dealing with and the question is whether the publication described falls within the first class and is absolutely privileged. The difference in the two classes of privilege is "that malice destroys the one and does not change the other." Andrews v. Gardiner, 224 N. Y. 440, 121 N. E. 341, 2 A. L. R. 1371. Absolute privilege means that immunity is given even for intentional false statements, while a qualified or conditional privilege, as its title denominates, grants immunity only if the privilege is not abused and the defamatory statements are published in good faith and without malice. 22 Mich. L. R. 437-438; Odgers, Libel and Slander, p. 228; 1 Cooley, Torts, p. 525; 3 Restatement, Torts, p. 593. The effect of absolute privilege, when it exists, is that it affords a complete defense, an "absolute immunity from suit." Jones v. Brownlee, 161 Mo. 258, 265, 61 S. W. 795, 3 Restatement, Torts, p. 219; 33 Am. Jur., Sec. 125; Odgers, Slander & Libel, p. 227. Because absolute privilege is a complete immunity and an exception to the general rules of liability for defamation and is founded on a definite public policy, the tendency and policy of the courts is to not extend the number or instances of absolute privilege unless the policy upon which privilege is based is found to exist in the new situations. Barber v. St. Louis Dispatch Co., 3 Mo. App. 377, 385; Hagener v. Pulitzer Pub. Co., 172 Mo. App. 436, 158 S. W. 54; Andrews v. Gardiner, supra.

A mere enumeration of the recognized absolute privileges, irrespective of consent, demonstrate the policy and reasons for the exceptional rule. They are judicial officers, attorneys at law, parties to judicial proceedings, witnesses in judicial proceedings, jurors, legislative proceedings, certain executive proceedings and publications between husband and wife of defamatory matter regarding third persons. 3 Restatement, Torts, Secs. 585-592; 36 C. J., Secs. 223, 230. In these instances absolute immunity exists because the defamatory language was uttered or printed under circumstances such as to make it right that the one charged with libel may freely and

fully speak his mind. The circumstances are the *occasion* upon which the language is used and it is the occasion which is privileged. Odgers, Libel & Slander, p. 227; Townshend, Slander & Libel, Sec. 209, p. 297; 9 Col. L. R. 468. That it is the occasion which affords the immunity is demonstrated by what the court said of a newspaper report of an extradition hearing in Brown v. Globe Printing Company, 213 Mo. 611, l. c. 643, 112 S. W. 462:

"While words reflecting on the character of an individual, spoken or written in due course of a judicial or quasi-judicial proceeding, if pertinent to the subject of the inquiry or relevant to the issue, or in a legislative assembly, by a member thereof, *in the discharge of his official duties*, are privileged, this privilege does not go to the extent of allowing the publication of the slanderous words in a newspaper, even though the publication is made in good faith and as a matter of news. The authorities draw a broad distinction between the right of a person, on a privileged occasion, to utter words reflecting upon the character of another, and the right to publish through the newspaper press any false and defamatory matter contained in such person's speech or address."

In this connection it cannot be denied but that the general rule is as the defendants contend that defamatory matter contained in pleadings filed according to law in a court having jurisdiction, if relevant and pertinent to the case, is absolutely privileged, and it is immaterial that the allegations are false and maliciously made. McCormick v. Ford Mfg. Co. (Mo.), 232 S. W. 1010; Maginn v. Schmick, 127 Mo. App. 411, 105 S. W. 666; Townshend, Slander & Libel, Sec. 221, p. 332 and the annotations in 134 A. L. R. 483; 42 A. L. R. 878; 16 A. L. R. 746; 13 L. R. A. (N. S.) 820; 22 L. R. A. 649; 12 Ann. Cas., p. 1025, Ann. Cas. 1913D, p. 444. For an example of matter not pertinent and relevant and, therefore, not privileged see and compare: Hyde v. McCabe, 100 Mo. 412, 13 S. W. 875. The rule, as applied to pleadings, is illustrated by the leading case of Jones v. Brownlee, 161 Mo. 258, 61 S. W. 795. There Mrs. Jones brought an action for libel in which she alleged that Mrs. Brownlee, in her divorce action, defamed her by falsely and maliciously alleging that her husband had "been guilty of consorting and cohabiting with other women, including Mrs. Ella Jones." In sustaining the defense of absolutely privileged publication the court said, l. c. 267:

"The petition having alleged the pendency of the divorce case between plaintiff's husband and herself in a court of competent jurisdiction, and having shown on its face that her answer was a pleading in that civil case, and it appearing to us that, tested by the rules of law, the said answer, whether true or false, or whether definite enough in its averments, was relevant to the issues in that case, in our opinion it was a privileged communication for which an action of libel cannot be maintained."

Furthermore, it is to be noted that the rule was applied even though the plaintiff in the libel action was not a party to the divorce suit in which the libelous matter was published. Annotation, 134 A. L. R. 483, 486; Link v. Moore, 32 N. Y. S. 461; Miller v. Gust, 71 Wash. 139, 127 Pac. 845. The reason for the rule of absolute immunity for defamatory matter contained in pleadings is that "Perfect freedom to say in their pleadings ▓▓▓▓ whatever the parties choose to bring to the consideration of the court or jury tends obviously to promote the intelligent administration of justice. The attainment of this result is of much greater importance than the prevention of evils arising from reflections on parties or others in the course of an action." 9 Col. L. R. 463, 478.

▉ These principles do not completely dispose of the matter, however, as the defendants contend. Here the defendants are alleged to have caused defamatory matter to be published on a privileged occasion by one who was then a party to a judicial proceeding and, therefore, in a position to claim the privilege and the question is whether the present defendants may take advantage of that fact and claim that the privileged occasion is also a defense as to them. Whether this is so depends on a consideration of other applicable rules of law pertaining to defamation and, more important, whether there are any reasons of public policy justifying an extension of the rule of absolute immunity for maliciously false and defamatory matter in pleadings to those who may have some kind of an interest in the pleadings and the proceedings they involve but who are not, in fact, parties to the proceedings.

The fundamental basis of the law of defamation is that one is liable for an unprivileged communication or publication of false and defamatory matter which injures the reputation of another. 3 Restatement, Torts, Secs. 558, 559, 577. The actual publisher (meaning "any act whereby the defamatory matter is intentionally or negligently communicated to a third person." 3 Restatement, Torts, p. 192) is not alone legally responsible for the defamatory publication but "all who in anywise aid or are concerned in the production of the writing are liable as publishers; the publication of the writing is the act of all concerned in the production of the writing. Thus, if one composes and dictates, a second writes, and a third publishes, all are liable as publishers, and each is liable as a publisher." Townshend, Slander & Libel, Sec. 115, pp. 94-95; Odgers, Libel & Slander, pp. 171-172; Buckley v. Knapp et al., 48 Mo. 152, 159. Liability attaches to one who requests, aids or procures another to publish the defamatory matter, "the procurer is guilty of a publication whenever it takes place." Folkard's Starkie on Slander & Libel, Sec. 539, p. 574; Odgers, Libel & Slander, p. 168; 37 C. J., Sec. 298, p. 12; 33 Am. Jur., Sec. 196, pp. 184-185; Kelly, The Law of Newspaper Libel, p. 141.

The case of McDonald v. R. L. Polk & Co., 346 Mo..615, 142 S. W. (2d) 635, is illustrative of this fundamental. There Nulsen prepared a defamatory pamphlet. As a part of its usual and ordinary service and business R. L. Polk & Co. furnished a mailing list of business men and lawyers and mailed the pamphlets to those on the list. R. L. Polk & Co. had nothing to do with the preparation of the matter contained in the pamphlets and when sued for libel contended that it was not liable unless its employees "knew that the circular was or probably might be libelous" which it did not. The defendant also contended that there was no publication because it merely transmitted something apparently innocent without knowledge that it was libelous. The court held that publication was the communication of defamatory matter to a third person and said, 346 Mo. l. c. 623:

"There is no merit in the contention that defendant did not publish the libel. . . . 'As a general rule, all persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication.' . . . 'Any false and defamatory publication which is not privileged gives rise to a case for damages sustained from it. This is true of libel. . . . The essential facts are the falsity of the charge, its publication and libelous nature.' "

Privilege was not involved in the case but publication was and one was held to be a publisher regardless of its knowledge and intention because it unwittingly took part in publishing defamatory matter and was liable although not the author of the libel. Before the author or the publisher may be exonerated he must be able to justify the publication or bring himself within an absolute or conditional privilege. Clark v. McBaine, 299 Mo. 77, 252 S. W. 428.

The defendants do not point out or even say that there are any cogent reasons of public policy compelling the application or extension of the absolute privilege to them. They simply stand on the proposition that the publication complained of is the filing of the petitions in the District Court, that was the *occasion,* and being so was a privileged publication affording a complete defense to all and sundry who might be charged (whether parties to the pleadings and suits or not) with conspiring to defame and procuring another to publish defamatory matter on a privileged occasion or in such a manner that the actual publisher is immune from liability.

As we pointed out in the beginning, the public policy which is the rationale of privilege is that there are times or occasions when it is to the public interest that one should be permitted to speak freely and fully without being brought to account for injuring another's reputation in doing so. Absolute privilege insures "freedom of speech where it is essential that freedom of speech should exist." 9 Col. L. R., p. 469. And, one of these occasions or instances when complete freedom of speech should exist and is, in fact, indispensable

is in the administration of justice and, therefore, *parties to judicial proceedings* are absolutely privileged "to publish false and defamatory matter of another . . . during the course of and as a part of a judicial proceeding in which he participates." 3 Restatement, Torts, Sec. 587. This privilege which is accorded parties includes and covers the pleadings filed by "a party to litigation." 3 Restatement, Torts, p. 232. But, "The absolute immunity in defamation accorded on certain occasions . . . presents a conflict or antinomy between two principles equally regarded by the law—the right of the individual, on one hand, to enjoy his reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive and judicial departments of the government." 9 Col. L. R. 463.

It is alleged that the defendants in the instant suit acted together for the purpose of wrongfully, intentionally, wantonly and maliciously causing The Mississippi River Power Company and The Union Electric Company of Illinois to repeat the false and defamatory statements that he appropriated his principals' money "by incorporating them" in complaints in suits to which the defendants are not parties. If this be the fact, and we assume it is for the purpose of this opinion, is it in the interest of the public that such an instance of defamatory publication be absolutely privileged? We find no reason or principle of public policy demanding the extension of the doctrine to those who are alleged to have procured the publication of the libelous matter by others who were privileged to do so because they were parties to litigation. The present defendants may not take advantage of the privileged occasion because they are not in character as parties or pleaders to that privileged occasion or instance. When absolutely privileged publication is claimed it must appear that "The publication, . . . as Lord Mansfield said, be made 'in office'; in other words, it must be made in the character of judge, juror, witness, litigant, or counsel, in the performance of the public duty or in the exercise of the private right upon which the immunity is based." 9 Col. L. R. 463, 490.

We have discovered three authorities which, we think, fully substantiate our view that merely because defamatory matter is published on a privileged occasion by one entitled to immunity by reason of his proximity and relationship to the occasion that such immunity should not be extended so as to include the instant defendants and the position they are alleged to occupy in the circumstances complained of. Rice v. Coolidge, 121 Mass. 393, 23 Am. Rep. 279; Ewald v. Lane, 104 Fed. (2d) 222; Bigelow v. Brumley, 138 Ohio St. 574, 37 N. E. (2d) 584. Apparently to the contrary is Schaub v. O'Ferrall et al., 116 Md. 131, 81 Atl. 789, Ann. Cas. 1913C, p. 799, 39 L. R. A. (N. S.) 416.

In Rice v. Coolidge a demurrer had been sustained to a declaration which alleged that in a divorce suit in Iowa between Joseph S. Coolidge and Mary L. Coolidge the defendants conspired together and procured suborned witnesses who falsely testified that Joseph Coolidge had been guilty of adultery with the plaintiff. None of the parties to the libel suit were parties to or witnesses in the divorce suit. In holding that the declaration was not demurrable the court said, l. c. 395, 396, 397:

"The defendants contend that the witnesses who uttered the defamatory statements are protected from an action, because they were statements made in the course of judicial proceedings, and that therefore a person, who procured and suborned them to make the statements, is not liable to an action. . . .

"We assume, therefore, for the purposes of this case, that the plaintiff cannot maintain an action against the witnesses in the ▮▮▮▮ suit in Iowa, for their defamatory statements, though they were false. But it does not follow that she may not maintain an action against those who, with malice and intent to injure her, procured and suborned those witnesses to testify falsely.

"The reasons why the testimony of witnesses is privileged . . . (is) in order to promote the most thorough investigation in courts of justice, public policy requires that witnesses shall not be restrained by the fear of being vexed by actions at the instance of those who are dissatisfied with their testimony. . . .

"Upon a careful consideration of the case, we are of opinion that there are no rules of law and no reasons of public policy which deprive the plaintiff of her remedy for the wrong done her by the defendants by suborning witnesses to defame her character."

This same case also disposes of the present defendants' contention that to impose liability in this case would violate the rule that the guilt of the principal in a criminal case must be shown before one can be convicted as an "aider or abetter." State v. Phillips & Ross, 24 Mo. 475. The Massachusetts court said this of a similar argument, l. c. 396:

"The argument, that an accessory cannot be held civilly liable for an act for which no remedy can be had against the principal, is not satisfactory to our minds. The perjured witness and the one who suborns him are joint tortfeasors, acting in conspiracy or combination to injure the party defamed. The fact that one of them is protected from a civil suit by a personal privilege does not exempt the other joint tortfeasor from such suit."

Ewald v. Lane was an identical case on its facts and the court said, 104 Fed. (2d) 222:

"Plaintiff, a married woman, charges that the defendants conspired to defame her by causing a false charge of adultery to be made against her in a divorce suit. Like conduct has been held actionable as defamation. Rice v. Coolidge, 121 Mass. 393."

In Bigelow v. Brumley the plaintiff was the author of a proposed amendment to the Constitution of Ohio relating to pensions for the aged. The proposal was by initiative and was known as the "Bigelow Amendment." In Ohio the law provides that before such an initiative proposal is submitted to the voters the Governor shall appoint a committee to investigate the matter and prepare arguments against it. The committee in turn submits the arguments to the Secretary of State whose duty is to circulate the arguments to the electorate. All of which was done in this instance but the plaintiff in his libel suit joined several defendants who were not members of the committee but who, he alleged, caused the committee to publish certain libelous matter concerning him. The court held the matter complained of to be an official statement required by law and, therefore, to be absolutely privileged as to those whose duty and position required or made them parties to it. But the court found that the reasons for the immunity as to the actual parties to the proceedings did not exist as to those who had no official duty in connection with it and, therefore, the privilege did not extend to them.

A fortiori if the absolute privilege of witnesses and official bodies does not extend to those who cause or procure the immune to publish defamatory matter it cannot extend to one who causes or procures a privileged pleader to do the same thing.

■ Next, it is further argued, by at least one of the present defendants, that since it appears from the plaintiff's allegations that the defendants are holding companies or otherwise own and control The Mississippi River Power Company and The Union Electric Company of Illinois and especially with respect to the suits filed against the plaintiff that they are parties interested in, though not actual parties to the suit, and for that reason the absolute immunity of the pleader extends to them. The basis for this contention is Nissen v. Cramer, 104 N. C. 574, 10 S. E. 676, in which, during the course of a trial, Cramer, the general manager of the defendant company, was present assisting counsel and said, as the plaintiff left the witness stand: "That's a lie." The court says Cramer was present representing and acting as the company's agent. Apparently for that reason the court indicated that he was entitled to the privilege of a party to a judicial proceeding. However, the court also said it was proper that Nissen was given an opportunity to show "that the language, which was in fact pertinent, *was in fact used to gratify malice* which the defendant at the time entertained towards the plaintiff," thus indicating that his immunity ■ was that of the conditional or qualified privilege rather than absolute privilege. But in any event the case is not controlling here.

As we have said, the defendants' argument on this point is that because the defendants, under the petition, superintend and control the actual publishers they occupy a personal or official relationship to the parties in the legal proceedings and are, therefore, interested

and entitled to have the privilege accorded parties extended to them. The difficulty with this theory is that if this be the fact and the basis of their claimed immunity, then they rely upon a conditional or qualified privilege and not on absolute privilege or immunity, in which case the plaintiff would be entitled to recover despite the privilege ''if he can prove that the words were not used in good faith, but that the party availed himself of the occasion wilfully and knowingly for the purpose of defaming the plaintiff.'' Newell, Slander & Libel, Sec. 389, p. 415. The conditional privilege affords immunity ''if the occasion is not abused'' thus the conditional differs from the absolute privilege, it affords protection ''only when the publication is made for a proper purpose and is appropriate thereto.'' 3 Restatement, Torts, p. 215, Sec. 593(b); 1 Cooley, Torts, Sec. 151; 36 C. J., Sec. 205; 33 Am. Jur., Sec. 126.

When interest or legal or moral duty is relied on as the basis of an immunity or a defense the privilege asserted is conditional and not absolute. 22 Mich. L. R. 437, 439; Odgers, Libel & Slander, p. 249; Newell, Slander & Libel, Sec. 389. ''An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.'' 3 Restatement, Torts, Sec. 596. And this is the privilege accorded business matters and inter-company communications. 33 Am. Jur., Secs. 170-171. Obviously, if the privilege is conditional it would not be proper for the court to sustain a demurrer to the plaintiff's petition for that reason unless it should affirmatively appear from the petition in some manner, which the defendants do not assert and which is difficult to imagine, that the plaintiff had failed to state a cause of action in that respect. 33 Am. Jur., Sec. 251; 37 C. J., Sec. 403; Townshend, Slander & Libel, Sec. 362.

The defendants filed a motion to dismiss the plaintiff's appeal for the reasons that his brief does not contain a proper statement of the facts, a statement in numerical order of the points and authorities relied on, nor a statement of the grounds of this court's jurisdiction as our rules require. Sec. 1226, R. S. Mo. 1939; Supreme Court Rule 15. The brief is subject to all these objections but the case is here on a demurrer to the petition, which asks for a large sum by way of damages, and the only question is whether it states a cause of action and for that reason we have considered the case on its merits and the motion is overruled. Brown v. Citizens State Bank, 345 Mo. 480, 134 S. W. (2d) 116.

The judgment appealed from is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.