364 S.E.2d 778

**Richard E. CRAIN**

v.

**Robert L. LIGHTNER, Roy E. Barker, Joseph C. Hummel, David R. Gold, James D. Elson, Robert L. Elson, Marilyn Joan Elson, David Sedore and The Ogden Newspapers, Inc., A Corporation.**

**No. 16573.**

Supreme Court of Appeals of
West Virginia.

Decided June 17, 1987.

Rehearing Denied Nov. 10, 1987.

William R. Metzner, Wheeling, for Crain.

William E. Watson, Wellsburg, for Lightner, Barker, & Hummel.

Ernest Simon, Pittsburgh, Pa., for Gold.

J.K. Chase, Jr., Moundsville, for Elson's.

James F. Companion, Wheeling, for Gold.

Herbert G. Underwood, Clarksburg, for Sedore & Ogden Newspapers.

McHUGH, Justice:

This civil action involving alleged libel is before this Court upon an appeal from a final order of the Circuit Court of Ohio County, West Virginia, granting the defendants'/appellees' motion for summary judgment. The plaintiff/appellant is Richard E. Crain, a bail bondsman. The defendants/appellees are Robert L. Lightner, at all relevant times the Sheriff of Marshall County, West Virginia, Roy E. Barker, at all relevant times a deputy sheriff of Marshall County, and Joseph C. Hummel, during part of the relevant period a police officer with the City of Moundsville and during the remainder of the relevant period the chief deputy sheriff of Marshall County. Based upon our review of the record, the petition for appeal and the briefs and oral argument of counsel, we affirm.

I

The appellant is a bail bondsman and is the principal owner of American Bonding Company, Inc. The latter on several occasions furnished bail bonds for James Elson. James Elson's parents, Robert and Marilyn Elson, entered into contracts with American Bonding Company, Inc., in which contracts the Elsons promised to pay bail-bond fees to American Bonding Company, Inc. The Elsons also executed and delivered deeds of trust to their real estate to secure the promised payment of bail-bond fees.

The Elsons later filed an action against the appellant and American Bonding Company, Inc., seeking to invalidate the bail-bond fee-payment contracts and to compel a release of the deeds of trust. The Elsons alleged in their complaint that the appellant had solicited James Elson to commit crimes (such as burglaries) as part of the consideration for furnishing the bail bond. There were newspaper accounts of the Elsons' complaint, with headlines reading, "bail bondsman accused of arranging for crimes."

The appellant subsequently brought this action for libel against the Elsons; their attorney; the newspaper company and the news reporter who had published the newspaper accounts of the Elsons' complaint against the appellant; and the appellees herein, the Sheriff of Marshall County and two of his deputies (hereinafter "the law enforcement defendants").

The appellant alleged in his libel complaint that the law enforcement defendants had harbored ill will against him for "bonding out" several criminal defendants whom the law enforcement defendants herein did not want released from jail. The appellant also alleged that the law enforcement defendants had promised several jail inmates leniency if the jail inmates would fabricate stories about the appellant's soliciting them (the jail inmates) to commit crimes as part of the consideration for furnishing them bail bonds on prior occasions. The appellant further alleged that the law enforcement defendants informed the Elsons' attorney, prior to the Elsons' action against the appellant, that these jail inmates would corroborate the Elsons' allegation that the appellant had solicited the commission of crimes as part of his bail-bond business.

About four months after the Elsons filed their action against the appellant to invalidate their bail-bond fee-payment contracts and to compel a release of the deeds of trust, the Elsons' attorney, as part of their action, took the deposition of a jail inmate

named Steven Headley. Headley testified that the appellant, prior to the Elsons' action, had solicited him to commit a burglary at a certain physician's office as a part of the consideration for furnishing bail for Headley. Several months after this deposition, however, Headley, during a second deposition, admitted that he had lied about the appellant's soliciting him to commit a burglary and testified that the law enforcement defendants, a few weeks before the first deposition (and *after* the Elsons' complaint had been filed), had insinuated that another pending criminal charge against Headley would be "dropped" if he would "talk to" the Elsons' attorney, apparently about the appellant's alleged procurement-of-crimes activities.

The trial court granted the motion to dismiss (for failure to state a claim) which had been filed by the newspaper company and the news reporter in the appellant's libel action. The trial court also granted the motion for summary judgment filed by the Elsons' attorney. The trial court held that the so-called "media defendants" were protected by the "fair reporting" privilege and that the Elsons' attorney was protected by the absolute privilege for statements in pleadings.

The law enforcement defendants filed a motion for summary judgment, and the same was granted by the trial court after hearing oral argument of counsel and reviewing the parties' affidavits and briefs. The trial court held, *inter alia*, that there was no libel by the law enforcement defendants because they had not contributed to a nonprivileged publication of the alleged libelous statements.

## II

### A.

■ In syllabus point 5 of *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986), this Court held:

'Under the provisions of Rule 56 of the West Virginia Rules of Civil Procedure, when the moving party presents depositions, interrogatories, affidavits or otherwise indicates there is no genuine issue

as to any material fact, the resisting party to avoid summary judgment must present some evidence that the facts are in dispute.' Syl. pt. 2, *Guthrie v. Northwestern Mutual Life Insurance Co.*, 158 W.Va. 1, 208 S.E.2d 60 (1974).

*Accord*, syl. pt. 1, *Thomas v. Raleigh General Hospital*, 178 W.Va. 138, 358 S.E.2d 222 (1987); syl. pt. 3, *Hicks v. Chevy*, 178 W.Va. 118, 358 S.E.2d 202 (1987); syl. pt. 7, *Haddox v. Suburban Lanes, Inc.*, 176 W.Va. 744, 349 S.E.2d 910 (1986); syl. pt. 2, *Hamon v. Akers*, 159 W.Va. 396, 222 S.E.2d 822 (1976); syl. pt. 4, *Burns v. Cities Service Co.*, 158 W.Va. 1059, 217 S.E.2d 56 (1975). A summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *W.Va.R.Civ.P.* 56(c). *W.Va. R.Civ.P.* 56(e) provides that a party is not entitled to resist a motion for summary judgment by relying only upon the pleadings:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The party resisting a motion for summary judgment, by affidavit or as otherwise provided by Rule 56, does not, however, have to show that his case is developed to the point that he would prevail at trial:

The question on a motion for summary judgment is not ... whether the plaintiff has met the burden of proof on material aspects of his claim. It is, rather, whether a material issue of fact exists on the basis of the factual record developed to that date. The burden on a motion for summary judgment is not upon the non-moving party to show that he has devel-

oped facts which would allow him to prevail if his case was submitted to a jury. The burden [of persuasion] is on the moving party to show that there is no genuine issue as to any material fact in the case.

*Lengyel v. Lint,* 167 W.Va. 272, 280, 280 S.E.2d 66, 71 (1981).[1]

If there is any evidence in the record from any source from which a reasonable inference in the nonmovant's favor may be drawn as to a material fact, the moving party is not entitled to a summary judgment. In such a case there is a "genuine issue" as to a material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2557 n. 2, 91 L.Ed.2d 265, 278 n. 2 (1986) (Brennan, J., dissenting as to the application of agreed principles to the facts therein, joined by Burger, C.J., and Blackmun, J.). In contrast, if, after adequate time for discovery and upon motion, the record contains no evidence to support an essential element of the nonmovant's case, there is no "genuine issue" as to a material fact, and the moving party is entitled to a summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986).[2]

■ In the case now before this Court the plaintiff/appellant alleged in his complaint that the law enforcement defendants/appellees, as members of a conspiracy to defame the appellant, contributed to the publication of the purported libelous material (that the appellant as part of his bail-bond business solicited others to commit crimes). This material was published in the Elsons' complaint seeking to invalidate their bail-bond fee-payment contracts with the appellant. This material was also

---

**1.** "Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment." Syl. pt. 1, *Masinter v. WEBCO Co.,* 164 W.Va. 241, 262 S.E.2d 433 (1980).

We note that *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), requires a libel plaintiff who is a public official or a public figure to resist a motion for summary judgment by showing clear and convincing evidence of the defendant's actual malice. That is, the federal (and state) constitutional protections of free speech require a stricter standard of evidence to survive pretrial motions in such cases than is required in other cases. *Long v. Egnor,* 176 W.Va. 628, 635, 346 S.E.2d 778, 785–86 (1986).

**2.** In his dissenting opinion in *Celotex,* Justice Brennan, joined by Chief Justice Burger and Justice Blackmun, sets forth a cogent and thorough explanation of the respective burdens of the movant and nonmovant under Rule 56. His explanation is an elaboration upon the majority's sketchy analysis. His disagreement with the court concerned only the application of the following principles to the facts in *Celotex.*

At the outset Justice Brennan states that the burden is upon the party moving for summary judgment to show the nonexistence of a "genuine issue" as to a material fact. This burden has two distinct components: an initial burden of production, which may shift to the nonmovant, and an·ultimate burden of persuasion as to the nonexistence of a "genuine issue," which burden always remains on the movant.

If the burden of persuasion on the merits at trial would be on the nonmovant, the movant may satisfy the burden of production under Rule 56 in either of two ways. First, the movant may submit affirmative evidence that negates an essential element of the nonmovant's case. Second, the movant may demonstrate to the trial court that the nonmovant has not mustered evidence to establish an essential element of the nonmovant's case. Where the movant adopts this second option, he or she may not simply make the conclusory assertion that the nonmovant has no evidence. Instead, the movant must affirmatively show the absence of evidence in the record by reviewing for the court the affidavits, if any, discovery materials, etc.

The nonmovant who has the burden of persuasion on the merits at trial may defeat a motion for summary judgment which asserts that the nonmovant has no evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the movant. In that event, the movant must attempt to demonstrate the inadequacy of this evidence.

Once the movant attacks any record evidence which the nonmovant asserts is supporting, the burden of production shifts to the nonmovant, who must either (1) rehabilitate the evidence attacked by the movant, (2) produce additional evidence showing the existence of a genuine issue for trial or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f).

Summary judgment should be granted if the nonmovant fails to respond in one or more of these ways, or if, after the nonmovant responds, the court determines that the movant has shouldered his or her ultimate burden of persuading the court that there is no genuine issue of material fact for trial.

published in the newspaper articles summarizing the Elson's complaint. Our review of the record indicates that the trial court properly granted the law enforcement defendants' motion for summary judgment.

There is no evidence in the record showing the law enforcement defendants' participation or involvement in the publication of the alleged libel. The affidavit of the newspaper company and the news reporter and the affidavit of the Elsons' attorney, filed in support of their respective motions to dismiss and for summary judgment, do not mention the law enforcement defendants as a source of information. The appellant's affidavit and attached exhibits filed in opposition to the appellees' motion for summary judgment indicate only that the Elsons' attorney had told him (the appellant) more than a year prior to the filing of the Elsons' complaint that he (the Elsons' attorney) had heard from the law enforcement defendants that the law enforcement defendants were conducting an investigation of the appellant's alleged solicitation of others to commit crimes and that the law enforcement defendants were, as a part of such investigation, allegedly offering "deals" to jail inmates, including clients of the Elsons' attorney, who would "testify against" the appellant. According to these exhibits attached to the appellant's affidavit, the Elsons' attorney on the same occasion told the appellant it was the opinion of the Elsons' attorney that if the offer of a deal (such as dropping or reducing charges) was made often enough to a jail inmate, he would "possibly lie," that is, give false testimony that the appellant had solicited him (the jail inmate) or other persons to commit crimes. Finally, the only other evidence relied upon by the appellant in opposition to the law enforcement defendants' motion for summary judgment, specifically, Steven Headley's second deposition (taken in the Elsons' action), indicates only that the law enforcement defendants, after the Elsons' allegedly libelous complaint was filed, had insinuated that another pending criminal charge against Headley would be "dropped" if he would "talk to" the Elsons' attorney about the appellant.

Headley stated during his second deposition that the law enforcement defendants had *not* suggested that he give *false* testimony against the appellant. All of this evidence is insufficient to show that the law enforcement defendants had disseminated to the Elsons' attorney false and defamatory statements which were later published in the Elsons' complaint and in the newspaper accounts thereof.

### B.

In his petition for appeal and in his brief the appellant states that the trial court, on March 18, 1983, directed from the bench that the appellant was to initiate no discovery until the court had ruled upon the media defendants' motion to dismiss and upon contemplated similar motions of the other defendants, due to the "chilling effect" discovery would have upon the exercise of the defendants' constitutional right of free speech. *See Webb v. Fury,* 167 W.Va. 434, 282 S.E.2d 28 (1981). During oral argument before this Court counsel for the appellant asserted that the trial court granted the law enforcement defendants' motion for summary judgment without having afforded the appellant the opportunity to conduct discovery in order to develop evidence to resist such motion. The appellant argues, therefore, that the trial court's order granting such motion was improper as being premature. "[A] decision for summary judgment before discovery has been completed must [ordinarily] be viewed as precipitous." *Board of Education v. Van Buren & Firestone, Architects, Inc.,* 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980). Our review of the record and of the relevant law leads us to reject this argument of the appellant.

By a letter dated May 4, 1983, the trial court notified the parties that it was of the opinion to grant the media defendants' motion to dismiss for failure to state a claim upon which relief can be granted. In that letter the trial court scheduled a hearing on May 20, 1983, to determine whether the plaintiff/appellant could show enough facts to proceed with his libel action. At the conclusion of the hearing on May 20, 1983,

the trial court entered an order granting the media defendants' motion to dismiss. No record was made of this or any other hearing held in this case, according to the petition for appeal. Consequently the record is silent as to whether the trial court continued its ban on the appellant's discovery with respect to the remaining defendants, including the appellees.

On July 26, 1983, the law enforcement defendants/appellees filed their motion for summary judgment. There is no mention therein of any constitutionally protected free speech as a ground for the motion. The court heard oral argument on this motion on November 18, 1983, and the parties subsequently submitted briefs on the motion, according to the trial court's order granting the law enforcement defendants' motion for summary judgment. That order, dated March 14, 1984, noted that the "matter is now ripe for a decision."

These facts disclose that the appellant may have had about ten months (from the May, 1983 order dismissing the media defendants to the March, 1984 order granting the appellees' summary judgment motion) to conduct discovery in order to develop his case against the appellees. This would appear to be adequate time for discovery to resist a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 276 (1986) (a motion for summary judgment filed one year after commencement of the action was not premature).

■ Even if discovery was not permitted during these ten months, "[a]ny potential problem with such premature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full dis-

covery." *Id.,* 477 U.S. at 326, 106 S.Ct. at 2554–55, 91 L.Ed.2d at 276 (footnote omitted).[3] Here, the record does not contain a Rule 56(f) affidavit of the appellant, and he apparently did not raise the issue of a premature summary judgment motion during the hearing on the motion or in his brief on the motion. In granting the summary judgment motion in question the trial court did not refer to any Rule 56(f) affidavit of the appellant, and, to the contrary, indicated that the matter was ripe for a decision. Thus, the appellant asks us to decide that the summary judgment motion was premature without having first asked the trial court the same question by filing a Rule 56(f) affidavit. " 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.* 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.,* 174 W.Va. 506, 327 S.E.2d 683 (1984) (and cases cited at 688), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985). A similar statement of this principle is contained in *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971): "As a general rule, this Court, in the exercise of its appellate jurisdiction, will not consider and decide nonjurisdictional questions which were not presented to and decided by the trial court." 155 W.Va. at 481, 184 S.E.2d at 740.

Syllabus point 4 of *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971), states a holding relevant to the appellant's failure here to establish that he was precluded by the trial court from conducting discovery after dismissal of the media defendants:

'An appellant or plaintiff in error must carry the burden of showing error in the judgment of which he complains. This

---

3. *W.Va.R.Civ.P.* 56(f), which is identical to *Fed. R.Civ.P.* 56(f), provides:

(f) When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be ob-

tained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f) affidavits may be served at the hearing on the motion for summary judgment or even later. M. Lugar and L. Silverstein, *West Virginia Rules of Civil Procedure* 441 (1960). Here, no Rule 56(f) affidavit was ever served and filed, according to the record before us.

Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Point 4 Syllabus, *Pozzie v. Prather*, 151 W.Va. 880 [, 157 S.E.2d 625 (1967) ].

*Accord,* syl. pt. 1, *M.W. Kellogg Co. v. Concrete Accessories Corp.,* 157 W.Va. 763, 204 S.E.2d 61 (1974); syl. pt. 2, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973).

■ We hold that where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to *W.Va.R.Civ.P.* 56(f) and obtain a ruling thereon by the trial court. Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court.

### C.

■ "The essential elements for a successful defamation action by a private individual are: (1) defamatory statements; (2) *a nonprivileged communication to a third party;* (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. pt. 1, *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70 (1983) (emphasis added).[4] The key element in the case now before this Court is the second element listed in *Crump,* namely, publication. "Publication" sufficient to sustain common-law slander is uttering the slanderous words to some third person so as to be heard and understood by such person. *Thalhimer Brothers, Inc. v. Shaw,* 156 Va. 863, 871, 159 S.E. 87, 90 (1931). "Publication" is a term of art in the law of defamation. It

does not require the printing and mass dissemination of the defamation. Instead, "publication" applies to both slander and libel and means any form of intentional or negligent communication of a defamatory statement to a third person, that is, to someone other than the originator and the person defamed. R. Smolla, *Law of Defamation* § 4.12[1] (1986). *See also Restatement (Second) of Torts* § 577(1) (1976); *Black's Law Dictionary* 1105 (5th ed. 1979). In the case of slander, the act constituting publication is usually the speaking of the words. In the case of libel, publication usually consists of some act by which written or printed words are brought to the attention of a third person. *Restatement (Second) of Torts* § 577 comment a (1976). Publication is an essential element of a cause of action for the tort of defamation because the essence of the tort is diminution of one's reputation in the eyes of others, and unless the defamatory matter is communicated to a third person there has been no diminution of reputation. *Restatement (Second) of Torts* § 577 comment b (1976); R. Smolla, *Law of Defamation* § 4.12[1] (1986).

■ There may be more than one "publisher" of libel. If, as a conspiracy, one person orally composes and dictates the statement, a second person sees that the composition is reduced to written or printed form and a third person brings the statement in such form to the attention of anyone other than the person defamed, each of the three persons who contributed to the communication is responsible as a "publisher" of libel. *Laun v. Union Electric Co.,* 350 Mo. 572, 580, 166 S.W.2d 1065, 1070 (1942). The *Laun* court further observed that one who requests or procures, as well as one who aids, another to publish the defamation is responsible for a "publication" whenever it takes place. *Id.*

■ In *Laun* and in the case now before this Court the libel plaintiff alleged a con-

---

**4.** We, like the trial court, will assume, without deciding, that the appellant, a bail bondsman, is a private individual, not a public figure. The issue was not decided below and has not been raised here. To recover damages for libel a public official or a public figure must generally show that the defendant published the libel with

"actual malice," *see* syl. pt. 4, *Long v. Egnor,* 176 W.Va. 628, 346 S.E.2d 778 (1986), while, as the quote from *Crump, supra* in the text indicates, a private individual must only show that the defendant was negligent in publishing the libel, to recover compensatory damages.

spiracy among several persons to defame him. In a libel action by a private individual against persons who are alleged to have procured or assisted other persons in publishing the alleged libel, the alleged procurers or assistants are not responsible as publishers of libel absent a showing of their participation or involvement in the publication. *See Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 540, 435 N.Y.S.2d 556, 559–60, 416 N.E.2d 557, 560–61 (1980). In *Karaduman* the summary judgment motion of the libel defendants was granted after the plaintiff was given full opportunity to conduct discovery to enable him to resist such motion by showing the participation of the original publishers (newspaper reporters) in the republication of the alleged libel (in book form by another person). "Inasmuch as the record is barren of any concrete evidence of the reporters' involvement in the republication of the newspaper series, we conclude that the causes of action against them must be dismissed." 51 N.Y.2d at 540, 435 N.Y.S.2d at 560, 416 N.E.2d at 561. In the case before us there has been no showing of the law enforcement defendants' participation or involvement in the publication of the alleged libel in the Elsons' complaint, as discussed in subsection II.A. of this opinion, *supra.*

Based upon all of the above, the final order of the trial court is affirmed.

Affirmed.