483 S.E.2d 806

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**David John FRANCISCO, Defendant Below, Appellant.**

No. 23325.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1996.

Decided Dec. 13, 1996.

Petition Refused Feb. 11, 1997.

James M. Casey, Point Pleasant, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Deborah L. McHenry, Managing Deputy Attorney General, Victor S. Woods, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

This is an appeal from the September 20, 1994 order of the Circuit Court of Mason County sentencing defendant David John Francisco to a term of forty years for one count of aggravated robbery and life without recommendation of mercy for one count of first degree murder. Defendant had previously pled guilty to both counts.

This Court[1] has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For reasons discussed below, the order of the circuit court is affirmed.

I

On or about September 1, 1993, defendant, who was then eighteen years old, with no prior criminal record, was staying in a remote area of Mason County, West Virginia known as "TNT." At approximately 6:00 p.m., Norman Ray Laudermilt, a stranger to defendant, had apparently been target practicing at the firing range there. Defendant's version of what transpired that night appeared as follows in the presentence investigation report:

I heard him from a pretty good ways away and started walking towards the sound. As I got near where he was, he came walking out from the range. I had a gun with me, a .22 rifle. I pointed the gun at him and told him to drop his gun and give me his wallet. He did not make any attempt to comply. He started to turn around and I shot him. They said I shot him six times, but I don't know if I did or not. I pretty much knew he was dead. I dragged his body over to a creek bed. I went through his pockets and got his keys and wallet and went to his truck and drove off. I went towards Ripley and stole a license plate to put on the truck. Then headed to Florida.

When I first heard the sound and started walking over to the gun range, I was just going to see who was there, that maybe I knew him or something. When I saw him, it just seemed like the opportunity to rob him presented itself, so I did.

Defendant was eventually captured in McClenny, Florida several days later, after he was seen in the victim's truck.

II

On March 28, 1994, defendant signed a plea agreement in which he agreed, subject to approval by the court, to plead guilty to first degree murder and aggravated robbery.[2] The plea agreement provided, *inter alia*:

2. Whether the defendant is to receive mercy upon his plea to the felony offense of 'first degree murder' shall be left to the sole discretion of the Court. The State will not make any specific recommendation as to whether the Court should grant this defendant mercy nor shall the State make any argument for or against the granting of mercy to this defendant.

3. No recommendation will be made by the State to the Court as to whether it should make a specific finding that this

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. The trial court had previously granted defendant's motion for a psychiatric and psychological examination to determine whether defendant was capable of understanding the charges against him and of cooperating with his counsel in his defense. Psychiatric and psychological evaluations of defendant were subsequently conducted at the Prestera Center for Mental Health Services, Inc. Upon receipt and review of the resulting reports, the trial court, by order of January 3, 1994, found that defendant was competent for trial. *See W. Va.Code,* 27–6A–1(d) [1983].

defendant made use of a firearm in the commission of the offenses to which he is entering a plea of guilty.

4. The State of West Virginia retains the right to inform the probation office and the Court, in writing, of any relevant facts, including the nature and seriousness of the offenses; to respond to any questions raised by the Court; to correct any inaccuracies or inadequacies in the presentence report; and, to respond to any statements made to the Court by or on behalf of the defendant.

5. There have been no promises or representations whatsoever made to the defendant by the State of West Virginia or any of its agents as to what the final disposition in this matter will be. It is understood that the matter of sentencing is within the sole discretion of the Court, and the State of West Virginia will make no recommendation as to a specific sentence.

Following a proceeding to determine whether the defendant knowingly and intelligently entered into the plea agreement, the trial court, by order of April 11, 1994, accepted defendant's pleas of guilty of aggravated robbery and first degree murder. The court further ordered defendant to undergo examination, diagnosis and classification at the Diagnostic and Classification Division of Huttonsville Correctional Center. *See W. Va. Code,* 62–12–7a [1991][3] ("[W]hen any person ... pleads guilty to, a felony, the court may, prior to pronouncing of sentence, direct that the person be delivered into the custody of the commissioner of corrections, for the purpose of diagnosis and classification[.]" *Id.,* in relevant part).

Copies of both the presentence evaluation report, prepared by the diagnostic unit at Huttonsville, and the presentence investigation report, prepared by the adult probation department of the twenty-ninth judicial circuit, were sent to defendant and his counsel, as well as to the trial court and the prosecuting attorney. The trial court also received a copy of the sentencing recommendation of defendant from Huttonsville, which recom-

mendation was based upon the evaluation of defendant conducted at Huttonsville. The trial court placed the sentencing recommendation under seal and copies of it were not released to either the defendant or the State.

Upon receipt of the sentencing recommendation, the trial court sent a letter, dated August 4, 1994, to William R. Hintz, M.A., Psychologist/Unit Supervisor at Huttonsville, indicating that the court was not completely satisfied with the diagnosis evaluation report and sentencing recommendation of defendant. The trial court's August 4, 1994 letter stated, in relevant part:

> What is at issue is when and if [defendant] should ever be eligible for parole. That decision rests solely with me. If [defendant] receives mercy on the murder charge, he will be eligible for parole in ten years. If I do not give him mercy, he will never be eligible. I can also vary his parole eligibility date by giving him mercy on the murder charge, but then sentence him to a definite term on the robbery charge to run consecutive to the murder charge.

> Were you able to determine whether [defendant] is a psychopath or sociopath? Does he have a conscious [sic]? Is he likely to commit crime[s] again if released in his late twenties or early thirties? In his forties? In his fifties? Will society be better off if he is never allowed freedom?

> I would appreciate your review of the Center's recommendation considering the issue as I've described.

This August 4, 1994 letter indicates that copies of it were transmitted to defendant's counsel and the prosecuting attorney.

Mr. Hintz replied to the trial court's inquiry by letter dated August 11, 1994. This letter was placed under seal by the trial court and copies of it were not released to either the defendant, his counsel, or the prosecuting attorney.

At defendant's sentencing hearing on September 20, 1994, defendant's counsel acknowledged that they had received the afore-

---

**3.** *W. Va.Code,* 62–12–7a was amended in 1994. However, the changes made thereto do not affect     this opinion.

mentioned diagnostic evaluation report and presentence investigation report. At no time either before or during the sentencing hearing did defendant's counsel raise or object to the trial court's August 4, 1994 letter to Mr. Hintz. Defendant's counsel likewise made no inquiry into Mr. Hintz's response to the August 4, 1994 letter.

Defendant presented no witnesses or evidence to mitigate the sentence about to be imposed on him, nor did he otherwise address the court with respect to sentencing. The circuit court subsequently sentenced defendant to a term of forty years on the count of aggravated robbery and life without recommendation of mercy on the count of first degree murder. It is from the trial court's September 20, 1994 sentencing order that defendant now appeals.[4]

### III

■ Under *W. Va. R.Crim. P.* 32(c)(3)(A),[5] the trial court was required to permit review of the presentence investigation report by defendant and his counsel. In *State v. Godfrey,* 170 W.Va. 25, 28, 289 S.E.2d 660, 664 (1981), this Court indicated that the diagnostic evaluation report should be treated in the same manner as the presentence investigation report. Accordingly, as indicated above, defendant was provided copies of both of these reports prior to his sentencing hearing. However, pursuant to *W.Va.R.Crim. P.* 32(c)(3)(A), the trial court properly placed the sentencing recommendation of defendant under seal and did not allow him or his counsel to review it. As we held in syllabus point one of *State v. Godfrey, supra:*

> 'Where a presentence report has been prepared and presented the court shall, upon request, permit the defendant, or his counsel if he is so represented, prior to imposition of sentence, to read the report exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons and the court shall afford the defendant or his counsel an opportunity to comment on the report, and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.' Syl. pt. 1, *State v. Byrd,* 163 W.Va. 248, 256 S.E.2d 323 (1979).

---

4. On or about June 13, 1995, defendant's newly-appointed appellate counsel filed a motion with the circuit court seeking access to three sealed envelopes. One envelope contained the presentence investigation report and the diagnostic evaluation report prepared at Huttonsville. The trial court unsealed this envelope for appellate counsel even though these reports were previously released to defendant and his trial counsel. The trial court denied defendant's appellate counsel access to the contents of the remaining two envelopes, one of which contained the sentencing recommendation of defendant from Huttonsville and the other, the August 11, 1994 letter from William Hintz to the trial court. Defendant's subsequent petition for writ of mandamus to order the trial court to unseal the envelopes was likewise denied by this Court.

On July 25, 1996, after defendant's petition for appeal to this Court was granted, the State filed a motion requesting that the documents be unsealed and that it be permitted to inspect them. This Court granted the State's motion by order of August 1, 1996 and both the State and defendant's appellate counsel were permitted to review the above-described sealed documents.

5. *W. Va. R.Crim. P.* 32(c)(3)(A) was the applicable rule in effect at the time defendant was sentenced on September 20, 1994. It provided:

*Presentence investigation.*—.... (3) Disclosure.—(A) *At a reasonable time before imposing sentence the court shall permit the defendant and his counsel to read the report of the presentence investigation exclusive of any recommendation as to sentence,* but not to the extent that in the opinion of the court the report contains diagnostic opinions which, if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. The court shall afford the defendant and his counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.
*W. Va. R.Crim. P.* 32(c)(3)(A) (emphasis added).
Amendments to Rule 32 became effective on January 1, 1996. However, any changes thereto do not affect the resolution of this appeal. *See W.Va.R.Crim. P.* 32(b)(6)(A).

*See* syl. pt. 4, *State v. Plumley,* 184 W.Va. 536, 401 S.E.2d 469 (1990).

Defendant does not argue that it was error for the trial court to place the sentencing recommendation under seal. However, it is defendant's contention on appeal that he should have been permitted to review the August 11, 1994 letter from William Hintz, Psychologist/Unit Supervisor at Huttonsville, so that he could rebut the information contained therein. Defendant maintains that this August 11 letter was an *ex parte* communication between the trial court and Mr. Hintz and that the letter improperly influenced the trial court in the sentencing of defendant.[6]

■ As discussed above, defendant's counsel below was sent copies of the August 4, 1994 letter from the trial court to Mr. Hintz, in which letter the trial court requested further information on the diagnostic evaluation report and sentencing recommendation. At no time either prior to sentencing or during the sentencing hearing did defendant's counsel raise or object to the August 4, 1994 letter by the trial court to Mr. Hintz. Moreover, the record does not reveal any inquiry by defendant's counsel as to the nature of the reply, if any, the trial court received from Mr. Hintz. By failing to raise this issue either prior to or during the imposition of sentence, defendant did not afford the trial court the opportunity to decide the issue in the first instance. The issue is therefore not reviewable by this Court on appeal: " ' " 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985).' Syl. pt. 2, *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987)." Syl. pt. 7, *State v. Garrett,* 195 W.Va. 630, 466 S.E.2d 481 (1995).

6. 'In his petition for appeal, defendant sought appellate review of two other issues: (1) whether he was denied effective assistance counsel below and (2) whether the convictions of both aggravated robbery and first degree murder violated the

**IV**

For the reasons discussed above, the September 20, 1994 order of the Circuit Court of Mason County sentencing defendant to a term of forty years for aggravated robbery and life without recommendation of mercy for first degree murder is affirmed.

Affirmed.

RECHT, J., sitting by temporary assignment.

double jeopardy clauses of the *W. Va. Const.* and the *U.S. Const.* This Court granted defendant's petition for appeal solely on the issue of sentencing.