# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-4073/05-1077

_____

Alternate Fuels, Inc., and
Larry W. Pommier,                           *
                                            *
       Appellees/Cross-Appellants,          *
                                            *   Appeal from the United States
v.                                          *   District Court for the
                                            *   Western District of Missouri.
Tom Cabanas, officer and employee           *
of the Missouri Department of               *
Natural Resources,                          *
                                            *
       Appellant/Cross-Appellee,            *
                                            *
Richard Hall, officer and employee          *
of the Missouri Department of               *
Natural Resources,                          *
                                            *
       Cross-Appellee.                      *

_____

Submitted: October 14, 2005
Filed: January 23, 2006

_____

Before LOKEN, Chief Judge, LAY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Alternate Fuels, Inc. (AFI) and its president, Larry W. Pommier, sued two employees of the Missouri Department of Natural Resources (DNR), Thomas M.

Cabanas and Richard A. Hall, for denial of equal protection under 42 U.S.C. § 1983, First Amendment retaliation, and tortious interference with contract. The Magistrate Judge[1] granted summary judgment to Hall on all claims, and to Cabanas on all but a tortious interference claim.[2] Cabanas appeals, arguing that he is shielded from liability under Missouri's absolute privilege doctrine. AFI and Pommier attempt to cross-appeal, seeking complete reversal of the summary judgment. This court affirms the denial of summary judgment to Cabanas, and dismisses the cross-appeal for lack of jurisdiction.

---

[1]The Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for decision by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]After the magistrate's order, only a state-law claim for tortious interference remains. There is no diversity of citizenship between the parties, because the defendants were sued only in their official capacity, making the suit one against the state. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998). A state has no citizenship for purposes of establishing diversity. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

The magistrate judge apparently exercised supplemental jurisdiction over this claim under 28 U.S.C. § 1367. *See Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 599 (8th Cir. 2002). Neither party asserts that this court or the magistrate judge lacks jurisdiction over the state-law claim. This court need not decide *sua sponte* whether the magistrate judge abused its discretion in exercising supplemental jurisdiction over the state-law claim. *See, e.g.*, *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 522 (7th Cir. 2003); *Lucero v. Trosch*, 121 F.3d 591, 598 (11th Cir. 1997); *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc); *Doe v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996). It is enough to determine, as we do, that the federal claims are not so devoid of merit as to vitiate supplemental jurisdiction over the state-law claim in this case. *See Hatch v. Town of Middletown*, 311 F.3d 83, 85 n.2 (1st Cir. 2002), *citing United Int'l Holdings, Inc. V. Wharf Holdings Ltd.*, 210 F.3d 1207, 1219-20 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001).

# I.

The Land Reclamation Commission, as a sub-component of the DNR, oversees compliance with the state's surface coal mining laws. *See* **MO. REV. STAT. §§ 444.800 - .970**. DNR employs inspectors of active coal mines who may issue notices of statutory violations (NOVs) and commence enforcement actions. Mine inspectors are supervised by Richard Hall, who is supervised by Section Chief Tom Cabanas.

AFI operates a surface coal-mining and reclamation project at the "Blue Mound Mine" in southwestern Missouri. AFI is subject to regulation and inspection by DNR officials. Since 1996, AFI's president, Larry Pommier, and other AFI employees have complained about enforcement actions by Hall and Cabanas at the Blue Mound Mine. Specifically, Pommier told Cabanas's supervisor that Cabanas engaged in inappropriate sexual conduct during a mine inspection in 1996. Thereafter, AFI representatives regularly spoke out at Commission meetings that Hall and Cabanas were overzealous, ordering numerous NOVs at the Blue Mound Mine. Pommier also notified the Commission that Hall and Cabanas made compliance demands that AFI could not realistically meet.

In April 1999, AFI began negotiating to sell the Blue Mound Mine to Midwest Coal, which was interested in AFI's permits, coal mining leases, coal supply agreements, and mining equipment. While the companies were negotiating, Cabanas informed Michael King, president of Midwest Coal, of a water-quality problem at the Blue Mound Mine. A "handshake agreement" reached in December 1999 later fell through.

In early 2000, Midwest Coal inquired about purchasing coal fines (microscopic coal particles) from AFI's slurry pit. After King and Pommier reached another initial agreement, Cabanas told King – viewing the facts favorably to AFI and Pommier – that any sale of slurry from the Mine would require a permit change, which would

never happen as long as Cabanas worked for DNR. Midwest Coal did not proceed with the sale.

AFI and Pommier sued Hall and Cabanas, alleging denial of equal protection and First Amendment retaliation. They also brought pendent state-law claims for tortious interference with contract, asserting Hall and Cabanas intentionally interfered with the sales to Midwest Coal.

After discovery, Hall and Cabanas moved for summary judgment. The magistrate judge granted their motions on the constitutional claims. As to the state-law tortious interference claims, the magistrate judge granted Hall's motion, but questioned whether Cabanas would be justified in saying, "a permit change will never happen as long as I work at DNR." Cabanas appeals the magistrate judge's denial of summary judgment on AFI's tortious interference claim, arguing he made the contested statement in the course of his duties as a state mine regulator and in anticipation of administrative proceedings.

II.

As an initial matter, this court must consider its jurisdiction of the interlocutory appeal. *See* ***Ward v. Moore***, 414 F.3d 968, 970 (8th Cir. 2005). The denial of summary judgment is not generally a final order subject to immediate appeal. *See* **28 U.S.C. § 1291**; ***Herts v. Smith***, 345 F.3d 581, 585 (8th Cir. 2003). In this case, however, this court has jurisdiction under the collateral order doctrine. Under this doctrine, an interlocutory appeal lies from a denial of absolute immunity. *See* ***Mitchell v. Forsyth***, 472 U.S. 511, 525 (1985) (a denial of absolute immunity is appealable before final judgment because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action"); ***Brown v. Griesenauer***, 970 F.2d 431, 434 (8th Cir. 1992); ***State ex rel. Bd. of Trustees v. Russell***, 843 S.W.2d 353, 355 (Mo. banc 1992) (a trial court's denial of

-4-

immunity defense in Missouri is subject to immediate writ of prohibition or mandamus). An interlocutory appeal also lies from a denial of absolute privilege. *See Boice v. Unisys Corp.*, 50 F.3d 1145, 1148-49 (2d Cir. 1995) ("immunity and privilege serve the same purpose: to encourage the possessor to execute his responsibilities fully, without fear of being sued later for civil damages"); *Smith v. McDonald*, 737 F.2d 427, 428 (4th Cir. 1984), *aff'd*, 472 U.S. 479 (1985).

III.

This court reviews de novo a district court's denial of immunity. *See White v. Holmes*, 21 F.3d 277, 279 (8th Cir. 1994).

Tortious interference with contract occurs when the defendant, without justification, causes damage by intentionally interfering with a business relationship of which the defendant has knowledge. *See Chandler v. Allen*, 108 S.W.3d 756, 760 (Mo. App. 2003). Justification exists if the defendant has a legal right to interfere with the contract (or an economic interest in the outcome of the business relationship), so long as the defendant does not employ improper means in causing the interference. *See Kruse Concepts, Inc. v. Shelter Mut. Ins.*, 16 S.W.3d 734, 737-38 (Mo. App. 2000). The plaintiff bears the burden of proving that the defendant acted without justification. *Id.*

In this case, the magistrate judge found that AFI and Pommier sufficiently established one claim of tortious interference against Cabanas, based on his alleged "never happen" statement. In denying summary judgment to Cabanas, the magistrate judge focused on the lack of justification for the comment, relying on the deposition testimony of Cabanas's supervisor. Cabanas's supervisor testified that such a subjective statement by Cabanas would be inappropriate, because it was not within Cabanas's discretion to decide whether to allow a permit transfer. Moreover, the supervisor testified that the Land Reclamation Commission supported the proposed

contract between AFI and Midwest Coal, and that he anticipated no problems with the necessary permit transfer.

On appeal, Cabanas asserts an absolute privilege. *See **Heart of Am. Grain Inspection Serv., Inc. v. Mo. Dep't of Agric.***, 123 F.3d 1098, 1105-06 (8th Cir. 1997) (applying the absolute privilege defense to a claim of tortious interference with contract under Missouri law). Absolute privilege forecloses liability for even intentionally false statements. ***Laun v. Union Elec. Co.***, 166 S.W.2d 1065, 1068-69 (Mo. 1943). It is, however, a limited defense under Missouri law. *See **id.*** Absolute privilege applies only where it is in the public interest that the defendant speak freely, without fear of litigation for false statements. ***Id.*** (indicating an absolute privilege applies to judicial officers, attorneys, parties, witnesses and jurors in judicial proceedings, legislators during legislative proceedings, and certain executive officials). This court has recognized that statements by public officials performing their official duties are absolutely privileged from state-law tort claims, including tortious interference. *See **Heart of Am.***, 123 F.3d at 1105-06. The circumstances, rather than the defendant's title, afford the privilege to speak freely. ***Laun***, 166 S.W.2d at 1069.

Cabanas argues that he was acting in the scope of his official duties as a state regulator in telling King that he would not approve a permit transfer upon the sale of AFI's coal fines to Midwest Coal. Cabanas's expansive view of "official duties" is refuted by his supervisor's testimony that Cabanas did not have the authority to make decisions regarding permit transfers, and that the Commission supported the contract and likely would have approved the AFI transfer. This court finds that Cabanas was not acting within the scope of his official duties and is not entitled on this basis to an absolute privilege for making a false statement.

Cabanas also argues that the statement was made in anticipation of administrative proceedings. Missouri recognizes an absolute privilege for

communications related to judicial and quasi-judicial proceedings. *See, e.g.*, *Barge v. Ransom*, 30 S.W.3d 889, 891 (Mo. App. 2000); *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 803 (Mo. App. 1997) ("statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body"). Cabanas argues that this privilege also includes statements made in anticipation of administrative proceedings. As the magistrate judge found, however, no administrative proceeding was anticipated when Cabanas told King he would not approve the permit transfer. Any administrative proceeding about a permit transfer at the Blue Mound Mine would occur only if Midwest purchased AFI's coal fines *and* the permit was denied. This court finds that administrative proceedings were not anticipated at the time Cabanas made the statement, and thus, he is not entitled to the benefit of the absolute privilege. *See Murphy v. A.A. Mathews*, 841 S.W.2d 671, 677 (Mo. banc 1992) ("immunity is granted in very limited situations only when the underlying public policy considerations so demand"); *Barge*, 30 S.W.3d at 891 ("Missouri courts generally decline to extend absolute privilege to proceedings not fitting within the legislative, executive, or judicial categories"), *citing Hohlt v. Complete Health Care, Inc.*, 936 S.W.2d 223, 224 (Mo. App. 1996).

## IV.

AFI and Pommier cross-appeal the magistrate judge's grant of summary judgment to Cabanas and Hall. After oral argument, Cabanas and Hall moved to dismiss the cross-appeal for lack of jurisdiction. A grant of partial summary judgment is not immediately appealable. *See Consul Gen. of the Rep. of Indonesia v. Bill's Rental's, Inc.*, 251 F.3d 718, 720 (8th Cir. 2001). This court has pendent jurisdiction to consider issues that are "closely related" or "inextricably intertwined" with an issue properly on appeal. *See Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1083 & n.2 (8th Cir. 2005), *petition for cert. filed*, 73 U.S.L.W. 3719 (U.S. May 31, 2005) (No. 04-1611); *Murphy v. State of Arkansas*, 127 F.3d 750, 453-54 (8th Cir. 1997).

The issues presented in AFI and Pommier's cross-appeal do not meet this standard. The equal protection and First Amendment retaliation claims that AFI and Pommier seek to appeal – focusing on overly zealous enforcement and a course of retaliation – present issues separate and distinct from those in Cabanas's appeal. *See McCoy v. City of Monticello*, 342 F.3d 842, 849 (8th Cir. 2003). AFI and Pommier assert that Cabanas's "never happen" tortious-interference claim is inextricably intertwined with their cross-appeal because all the claims arose during the course of retaliation. In order to have meaningful review of the appeal, however, it is not necessary to address the complete course of retaliation alleged.

Similarly, AFI and Pommier's appeal of the tortious interference claim regarding a water-quality problem at the Blue Mound Mine – which concerns a different contract – presents separate and distinct facts than those in Cabanas's appeal. *See id.* Finally, resolution of the cross-appeal is not necessary for "meaningful review" of Cabanas's appeal. *See Kincade v. City of Blue Springs*, 64 F.3d 389, 394-95 (8th Cir. 1995), *citing Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995). This court lacks jurisdiction of the cross-appeal.[3]

V.

The magistrate judge's denial of summary judgment is affirmed, and the case remanded. The cross-appeal is dismissed for lack of jurisdiction.

_____

---

[3]After oral argument, AFI and Pommier moved to stay this case pending the Supreme Court's decision in *Moore v. Hartman*, 388 F.3d 871 (D.C. Cir. 2004), *cert. granted*, 125 S. Ct. 2977 (U.S. June 27, 2005) (No. 04-1495). As this court lacks jurisdiction over the cross-appeal, the motion is denied.