# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-3794/07-1462

_____

Alternate Fuels, Inc. and
Larry W. Pommier,

Appellant/Cross-Appellees,

v.

Thomas M. Cabanas and
Richard A. Hall,

Appellee/Cross-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: November 15, 2007
Filed: August 18, 2008 (Corrected August 21, 2008)

_____

Before WOLLMAN, and BENTON, Circuit Judges, and DOTY,[1] District Judge.

_____

BENTON, Circuit Judge.

Alternate Fuels, Inc. (AFI) and its President, Larry W. Pommier, sued two officials of the Missouri Department of Natural Resources (DNR) – Thomas M. Cabanas and Richard A. Hall – for denial of equal protection, tortious interference with contract, and First Amendment retaliation. Summary judgment was granted to Cabanas and Hall on all claims except part of AFI's tortious-interference-with-

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

contract claim against Cabanas, who appealed. AFI and Pommier cross-appealed the partial summary judgment, which was dismissed for lack of jurisdiction, as not immediately appealable. *See Alternate Fuels, Inc. v. Cabanas*, 435 F.3d 855, 860 (8th Cir. 2006). This court affirmed the district court's[2] denial of summary judgment on the tortious-interference claim. *Id.* at 858-60.

This remaining claim was tried to a jury, with a verdict for AFI. Cabanas appeals. Pommier appeals the summary judgment for Cabanas on his First Amendment claim. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

.

The Land Reclamation Commission, a sub-component of DNR, oversees compliance with the surface coal-mining laws. *See* **Mo. Rev. Stat. §§ 444.800–.970**. The Commission's mine inspectors were supervised by Hall, who was supervised by Section Chief Cabanas.

AFI operated Blue Mound Mine, a surface coal mine that DNR regulated. Pommier was president (but not a shareholder) of AFI.

In 1996, Pommier complained to Cabanas's supervisor about his inappropriate conduct while at Blue Mound. Following this complaint, Cabanas instructed the inspector assigned to Blue Mound to cite the mine for numerous violations, even if they did not exist. He also instructed him to issue violation notices before determining if violations actually existed.

---

[2]The Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for decision by the consent of the parties pursuant to 28 U.S.C. § 636(c).

In May 1997, Pommier complained in writing about Cabanas's abusive and unfair conduct toward AFI, and treatment it received from the DNR section Cabanas supervised. In 1999, DNR and AFI entered into a Consent Agreement that attempted to resolve both the complaints against Cabanas and the alleged violations by AFI. It included a provision that inspectors of Blue Mound would report directly to the administrator of the Commission, bypassing Cabanas on regulatory matters.

Some time in 1998 or 1999, AFI and Midwest Coal, LLC, entered negotiations for Midwest to buy AFI's assets and liabilities ("Deal One"). After engaging in due diligence, Midwest decided the risk was too high. Deal One was not finalized. The parties began to discuss the possibility of Midwest buying AFI's coal slurries and using AFI's coal-washing facilities ("Deal Two"). Again, Midwest assessed the risks and benefits, including issues at Blue Mound that needed to be resolved with DNR. Deal Two did not materialize.

In early 2000, AFI began negotiating with Midwest for the sale of part of its coal slurries to be processed elsewhere ("Deal Three"). While the companies were negotiating and the Consent Agreement in effect, Cabanas made negative comments to Midwest about the possible purchase of AFI's coal slurries. This deal would have required a transfer of the DNR permit. Cabanas told Midwest's president "as long as I'm here, that won't happen." As a result, Midwest decided not to proceed with the purchase. At trial, Midwest testified it would have purchased all of AFI's recoverable slurries if Cabanas had not made this statement.

II.

This court now reviews the denial of Pommier's claim for First Amendment retaliation. *See AFI,* 453 F.3d at 860 (grant of partial summary judgment is not immediately appealable). This court reviews de novo a district court's ruling on a

motion for summary judgment. *Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006).

Cabanas asserts that Pommier does not have standing to assert this First Amendment claim. Pommier relies on *International Ass'n of Firefighters v. City of Ferguson,* 283 F.3d 969 (8th Cir. 2002), where this court held that an employee's wife had standing to present a First Amendment attack on the employer's prohibition on employee involvement in city politics (which clearly did not apply to her). *Id.* at 973. The wife alleged she was prevented from participating in political activities for fear of hurting her husband's position. *Id.* at 972. This court held that because of the economic effect on her (a joint bank account and the level of spousal support), she was asserting her own rights and thus had standing. *Id.* at 973.

Similarly, a corporate officer cannot maintain a personal action against a third party for harm caused to the corporation, unless the officer alleges a direct injury not derivative of the company's injury. *Potthoff v. Morin*, 245 F.3d 710, 717-18 (8th Cir. 2001) (sole shareholder and principal employee has no standing to enforce a First Amendment claim because he did not personally suffer a direct, nonderivative injury). The complaint here alleges only injury to the corporation AFI:

> In retaliation for the Plaintiffs [AFI and Pommier] exercising their First Amendment rights, Defendants [Cabanas and Hall] engaged in an intentional and continuing course of retaliation against Plaintiffs, including but not limited to, improper enforcement actions against AFI, issuing numerous Notices of Violations to AFI, and interference with Plaintiffs' business relationship with Midwest.

Plaintiffs' summary judgment motion also does not allege any direct nonderivative injury to Pommier. On appeal, Pommier emphasizes that the summary judgment

exhibits include Cabanas's statement that "this sale of [AFI] was an attempt by Larry Pommier to 'try to get out of this on his feet, and that's unacceptable to us.'" Even this statement does not reflect a direct injury to Pommier that is distinct from the harm suffered by AFI. Pommier has no standing to assert the First Amendment claim. *See Jaffke v. Dunham*, 352 U.S. 280, 281 (1957) (district court's decision may be affirmed for any reason supported by the record).

## III.

Twice during trial, Cabanas moved for judgment as a matter of law: at the close of the plaintiff's evidence, and at the close of all evidence. Neither motion was in writing nor included any relevant law or facts.

This court reviews de novo the denial of motions for judgment as a matter of law. *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003). However, if the movant's legal theories are not articulated before the verdict, review is limited to whether the judgment sought is "required to prevent manifest injustice." *Conseco Fin. Servicing Corp. v. N. Am. Mortgage Co.*, 381 F.3d 811, 821 (8th Cir. 2001).

Cabanas argues that a specific basis was not required in the motions for judgment as a matter of law. Rule 50(a)(2) refutes this. It says that the motion must specify both the law and the facts that entitle the moving party to the judgment. **Fed. R. Civ. P. 50(a)(2)**. If the motion for judgment as a matter of law is not specific enough to give notice to the opposing party of the issues underlying the motion, it cannot be granted or upheld on appeal. *See Conseco*, 381 F.3d at 821. If the conversation between the parties and the judge provides sufficient insight into the grounds on which it is based, the issues could be preserved for appeal. *See id.* While technical precision in stating grounds is not necessary, some basis for the motion has

to be apparent to the court and the parties. *See* ***Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.***, 53 F.3d 195, 197 (8th Cir. 1995).

Cabanas's motions for judgment as a matter of law gave no legal or factual basis. There was no discussion between the parties or the court that indicates any insufficiencies in the proof. Cabanas's motions for judgment as a matter of law cannot be the basis of an appeal.[3]

IV.

After trial, Cabanas filed a written motion for judgment as a matter of law and in the alternative, a motion for new trial – which did include legal theories. Cabanas outlined separate grounds for the motion for new trial. The new trial portion was based on the district court's refusal of two proffered instructions. A denial of a motion for new trial and the refusal to give proffered jury instructions are both reviewed for abuse of discretion. ***Shaw Group, Inc. v. Marcum***, 516 F.3d 1061, 1067-68 (8th Cir. 2008); ***Otting v. J.C. Penney Co.***, 223 F.3d 704, 712 (8th Cir. 2000); ***Peerless Corp. v. United States***, 185 F.3d 922, 927 (8th Cir. 1999).

Cabanas objected to the district court's refusal to give his "official duties" and "official immunity" verdict-directing instructions. Cabanas cites this court's footnote that Cabanas was being sued in his "official capacity, making the suit one against the state." ***AFI***, 435 F.3d at 857 n.2. Cabanas promotes this argument as the "law of the case" that bars suit against him personally.

---

[3]Cabanas does not argue on appeal that the alleged insufficiency of evidence of damages requires reversal in order to prevent manifest injustice. *See* ***Conseco***, 381 F.3d at 821.

Cabanas's argument ignores that after this court ruled in the earlier appeal, the district judge allowed AFI and Pommier to amend the complaint in order to sue him individually. Allowing or denying the amendment of a complaint is reviewed for abuse of discretion. *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003) *citing* *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Leave to amend should be freely granted unless there are compelling reasons "such as undue delay, bad faith, or dilatory motive . . . undue prejudice to the non-moving party, or futility of the amendment." *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992).

Cabanas opposed the amendment when requested. He argues that the motion should have been denied because of the inordinate amount of time between the original complaint and the request for leave to amend. The district court found that because of the intervening appeal, there was no undue delay. The court also ruled that the amendment was not futile because it related back to the date of the initial filing and allowed Cabanas to be sued individually. The court found no prejudice to Cabanas because throughout the suit, the parties had assumed the defendants were sued individually. The district court did not abuse its discretion by granting leave to amend the complaint.

This court previously held as a matter of law "that Cabanas was not acting within the scope of his official duties." *AFI*, 435 F.3d at 859. An employee must be performing official duties in order to receive official immunity. *Davis v. Lambert-St. Louis Intern. Airport*, 193 S.W.3d 760, 765 (Mo. banc 2006). The district court properly refused Cabanas's "official duties" and "official immunity" instructions.

V.

Cabanas continues to object that the district court did not have jurisdiction because the plaintiffs failed to exhaust their administrative remedies. In Missouri, failure to exhaust administrative remedies in a "contested case" divests courts of

subject matter jurisdiction. *See Strozewski v. City of Springfield*, 875 S.W.2d 905, 906 (Mo. banc 1994) (describing state constitutional right to administrative review, and types of cases that require exhaustion); **Mo. Rev. Stat. § 444.850.5** (land reclamation permit proceeding is a contested case). Subject matter jurisdiction can be raised at any time. *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993).

Assuming this is an issue of subject matter jurisdiction, exhaustion applies if a contested-case remedy is available. *See Hamby v. City of Liberty*, 20 S.W.3d 515, 518 (Mo. banc 2000); *Pessin v. State Tax Comm'n*, 875 S.W.2d 143, 146 (Mo. App. 1994). In this case, the sale was not finalized due to Cabanas's comments. No one was required to apply for a permit transfer. *See AFI*, 435 F.3d at 859; **Mo. Rev. Stat. § 444.840** (Commission approval required for revision, transfer, assignment or sale of rights under permit). The district court had subject matter jurisdiction of the tortious-interference claim.

VI.

The judgment of the district court is affirmed.

_____