# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1953

_____

Ray Nassar, Ph.D.; Gena Smith

*Plaintiffs - Appellees*

v.

Earnestine Jackson, Individually & in her official capacity as a Hughes School
Board member

*Defendant - Appellant*

Jimmy Wilkins, Individually & in his Capacity as Superintendent of the Hughes
School District

*Defendant*

Hughes School District

*Defendant - Appellant*

Hughes School Board, Members in their Official Capacities; Rudolph Robinson,
in Official Capacity as member of Hughes School Board; Demarcus Burks, in
Official Capacity as member of Hughes School Board; Leitha Cupples, in Official
Capacity as member of Hughes School Board; Irene Combs, in Official Capacity
as member of Hughes School Board; Jeff Spaletta, in Official Capacity as member
of Hughes School Board; W E Duckworth, in Official Capacity as member of
Hughes School Board

*Defendant*s

_____

GRUENDER, Circuit Judge.

Believing that the school district of Hughes, Arkansas ("school district") fired them because of their race, Ray Nassar and Gena Smith sued and won under several legal theories. The school district and one school-board member, Earnestine Jackson, now appeal several orders of the district court. We affirm in part and vacate and remand in part.

I.

The school district hired Ray Nassar as superintendent in 2008. While superintendent, Nassar hired Gena Smith as a business manager. The school district renewed Nassar's contract for the three years running from July 1, 2010 until June 30, 2013. Over those three years, the contract provided for a total salary of $274,000, plus benefits.

Both Nassar and Smith are white. After the racial composition of the school board shifted from a white majority to an African-American majority, Nassar's already-poor relationship with two African-American board members deteriorated further. One of those board members was Earnestine Jackson. At one public meeting, she referred to Smith as Nassar's "girlfriend," though both Nassar and Smith

are married to other people.  Jackson also said at a meeting that Nassar "lie[s]."  The hostility devolved into a profanity-laced exchange, and soon after, on February 8, 2011, the school district fired Nassar without a hearing.  A few months later, the school district fired Smith, also without a hearing.

Nassar and Smith sued the school district, Jackson, and others, alleging violations of due process, unlawful racial discrimination, and breach of contract.  Nassar and Smith both claimed that Jackson's "girlfriend" comment was defamatory, and Nassar individually complained of Jackson's saying that he "lie[s]."  The district court granted partial summary judgment for Nassar and Smith on the due-process claims, reserving the remaining claims and the determination of damages for trial.

At trial, an economist testified to different measures of Nassar's damages from losing his job.  The net salary and benefits lost between the date of Nassar's firing and the trial were worth $195,639.38.  During cross-examination, the economist valued at about $50,000 the salary and benefits that would have remained on Nassar's contract from the time of the trial until the contract would have expired.  Thus, Nassar's damages to the end of his contract totaled about $245,639.38.  The economist also testified that the present value of Nassar's lost salary, lost benefits, and added travel costs for seven years after trial was $283,577.77.  The school district and Jackson did not object to the testimony about future damages.

After the close of all the evidence, the defendants moved under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law, citing only "the plaintiffs' failure to carry their burden."  The court denied the motion and instructed the jury on the measure of damages appropriate under each of Nassar's and Smith's claims.  The court further instructed the jury to reduce its awards so as not to duplicate recovery for the same misconduct.

The jury found for Nassar and Smith on all claims. Specifically finding that Nassar would not have been fired had the school district provided a proper hearing, the jury awarded Nassar $340,000 on his due-process claim—more than he would have earned in salary and benefits through the end of the term of his contract—$1.00 on his discrimination claim, and $1.00 on his contract claim.[1] The defendants then renewed under Rule 50(b) their motion for judgment as a matter of law, claiming for the first time with specificity that the discrimination claims failed for insufficient evidence of racial discrimination and that the $340,000 due-process damages exceeded the amount supported by the evidence. The district court denied the defendants' motion.

Nassar and Smith requested attorney's fees. Their lead counsel's usual rate was $250 per hour, but they requested fees "more in line with the contingency fee agreement they had with their attorneys"—about $440 per hour for lead counsel. The court granted Nassar and Smith attorney's fees at a rate of $375 per hour for their lead counsel.

II.

The school district and Jackson appealed. Their brief argues that (1) they were entitled to judgment as a matter of law on the discrimination claims because there was insufficient evidence of racial discrimination, (2) Jackson was entitled to judgment as a matter of law on the defamation claims because there was insufficient evidence of publication and "actual malice," (3) the court should have reduced the due-process damages awarded or granted a new trial on that issue, and (4) the award of attorney's fees was excessive.

---

[1] The $340,000 award represented only economic damages. The jury also awarded other, non-economic damages that are not at issue on appeal.

A.

We turn first to the school district and Jackson's argument that they were entitled to judgment as a matter of law on the discrimination claims. They assert that the evidence was insufficient for a reasonable jury to find racial discrimination, an assertion that they first raised in their post-trial motion under Federal Rule of Civil Procedure 50(b). We conclude that the school district and Jackson have waived this issue.

Rule 50(b) provides for post-trial renewal of a Rule 50(a) trial motion for judgment as a matter of law. A court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion. *Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 617-18 (8th Cir. 2014). Rule 50(a) in turn requires that a "motion for judgment as a matter of law . . . specify . . . the law and facts that entitle the movant to judgment."

The school district and Jackson did specify why they believed they were entitled to judgment as a matter of law in their post-trial, Rule 50(b) motion. But in their Rule 50(a) motion, the school district and Jackson's attorney said only that:

> the defendants would move for a directed verdict based on the plaintiffs' failure to carry their burden on all but the due process claim. And I—I could go through all the evidence, but the Court—I won't go any further.

This statement, which specifies neither law nor facts, lacks the particularity required of a Rule 50(a) motion. *See Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 973-74 (8th Cir. 2008) (rejecting a judgment-as-a-matter-of-law argument on appeal because the Rule 50(a) motion "gave no legal or factual basis"); *Williams v. Runyon*, 130 F.3d 568, 571-72 (3d Cir. 1997) (finding the "blanket statement that 'there is no legally sufficient evidentiary basis for a reasonable jury to find for the Plaintiff o[n]

any of the issues that counsel have set forth in this case'" to be "obviously insufficient" to support a Rule 50(a) motion). Accordingly, despite the more particular Rule 50(b) motion, the school district and Jackson's nebulous Rule 50(a) motion "cannot be the basis of an appeal."[2] *Alternate Fuels*, 538 F.3d at 973-74; *see also Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 900-01 (8th Cir. 2006) (explaining that issues not included in a Rule 50(a) motion are waived and cannot be included in a Rule 50(b) motion). For this reason, we also do not consider Jackson's argument that the defamation claims failed for lack of publication or "actual malice."[3]

B.

The school district and Jackson next contest the $340,000 award to Nassar on his due-process claim. They assert that the damages could not have exceeded the value of the salary and benefits remaining on Nassar's contract. Expert testimony established that this value was about $245,639.38—$195,639.38 for damages from the date of Nassar's firing until the trial, plus approximately $50,000 from the trial until the end of the contract term. We conclude that the district court abused its discretion in sustaining the $340,000 award, and with respect to this issue, we vacate and remand with instructions to offer remittitur.

---

[2]Though we have recognized an exception to this kind of waiver to prevent "a manifest miscarriage of justice," *see BE & K Constr. Co. v. United Bhd. of Carpenters and Joiners of Am., AFL-CIO*, 90 F.3d 1318, 1325 (8th Cir. 1996), the school district and Jackson have not addressed waiver of these arguments at all, let alone asserted that an exception to waiver applies. *See Alternate Fuels*, 538 F.3d at 973-74 & n.3.

[3]The defamation argument was not included in the Rule 50(b) motion either. We would not consider it for that reason as well. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006).

The court had instructed the jury to award Nassar the economic damages caused by the denial of due process, that is:

> [a]ny wages or fringe benefits you find that the plaintiff would have earned . . . if he . . . had received the type of hearing required under the Constitution. In order to fairly compensate a plaintiff, any award should put the plaintiff in no better position than he . . . would have been in if the Hughes School District had provided the plaintiff a hearing prior to termination.

The parties agree that the jury was properly instructed as to the measure of damages. Nonetheless, the school district and Jackson argue that the $340,000 award improperly exceeded the only demonstrated value of Nassar's lost salary and benefits during the term of his contract, approximately $245,639.38.

Although Nassar asserts that this argument too was waived by the vague Rule 50(a) motion or by the lack of objection to the economist's future-damage evidence, we disagree. The school district and Jackson essentially argue "that the jury instructions were proper but were misapplied by the jury . . . resulting in an incorrect judgment." *Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 468 (8th Cir. 2013). As the school district and Jackson seek either a new trial on the issue or to amend the judgment, "a Rule 59 motion is the appropriate vehicle." *Id.* Admittedly, the school district and Jackson argued that the award was improper in their Rule 50(b) motion, not in a Rule 59 motion. But Rule 50(b)'s text explicitly allows for the inclusion of a Rule 59 request in a Rule 50(b) motion. Moreover, as already discussed, a Rule 50(b) motion renews only those grounds advanced in a Rule 50(a) motion, and here the school district and Jackson's argument would have been premature in a Rule 50(a) motion, which must be made before the case is submitted to the jury. The school district and Jackson could not have known at that time that the jury would grant an excessive award. Similarly, their failure to object to the economist's testimony on future damages does not mean they missed their chance to

ensure the jury followed its instructions. As such, the argument was not waived, and we construe as a Rule 59 motion that part of the Rule 50(b) motion challenging the $340,000 award. *See Maristuen v. Nat'l States Ins. Co.*, 57 F.3d 673, 679 n.4 (8th Cir. 1995) (treating a request to amend a judgment as a Rule 59 motion despite references to Rules 50(b) and 60(b)). We review the denial of a Rule 59 motion for abuse of discretion, *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013); *Trickey v. Karman Indus. Techs. Corp.*, 705 F.3d 788, 807-08 (8th Cir. 2013), and "we may reverse a district court's denial of a Rule 59 motion where its judgment rests on an erroneous legal standard," *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995).

On appeal, Nassar does not attempt to defend the $340,000 award except to argue that it included "front pay," an equitable remedy from our discrimination cases, *see, e.g.*, *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 639, 641 (8th Cir. 1997). Claiming that "future loss is synonymous with front pay," Nassar's economist testified that the present value of Nassar's seven-year front pay was $283,577.77. Together with past damages of $195,639.38, this amount far exceeds what the jury awarded, and thus, Nassar argues, the $340,000 award was justified. Front pay, however, may be awarded only by a court, not by a jury. *Id.* at 641-43. Even if we assume that front pay is available as a remedy for a due-process violation, it was error for the court to allow the jury to award it.[4]

---

[4]Even assuming further that the school district and Jackson consented to a jury determination and that front pay is not solely within the court's authority, we still believe that the jury did not follow its instruction that it award only those damages *caused by* the denial of due process. Based on the evidence presented by Nassar's economist, the award necessarily included lost salary and benefits beyond the term of Nassar's contract. The award thus assumes that Nassar's contract would have been renewed if he had received a proper hearing. Nassar's brief, however, points us to no evidence suggesting such renewal. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 339 (8th Cir.) (finding damages speculative where plaintiffs did not cite evidence supporting

Without the improper front pay, the only evidence of the value of Nassar's salary and benefits during the term of his contract was the economist's estimate of $245,639.38. The district court should offer remittitur to that amount. *See Racicky v. Farmland Indus., Inc.*, 328 F.3d 389, 400 (8th Cir. 2003). If Nassar does not consent to remittitur, the court should conduct a new trial on this issue. *See id.*

C.

Coming to the matter of fees, "[w]e review the district court's award of attorney's fees for abuse of discretion." *Miller v. Dugan*, 764 F.3d 826, 830 (8th Cir. 2014). The school district and Jackson argue (1) that the district court improperly enhanced the fee award to Nassar and Smith solely because of their contingency

assumption necessary to damage award), *cert. denied*, 135 S. Ct. 477 (2014); *see also McKenzie Eng'g Co. v. NLRB*, 373 F.3d 888, 894 (8th Cir. 2004) (modifying an award assuming certain durations of employment where the assumptions were "supported by neither [the employer's] past history as an employer, nor [the relevant] workers' past employment histories"). This is not a case in which Nassar's contract had been renewed time and time again. *Cf. Larch v. Mansfield Mun. Elec. Dept.*, 272 F.3d 63, 73-75 (1st Cir. 2001). Rather, this is a case from a generally at-will employment state, *see Crawford Cnty. v. Jones*, 232 S.W.3d 433, 438 (Ark. 2006), in which Nassar's contract had been renewed only once and in which board members were openly hostile to Nassar. Without some evidence that the contract would have been renewed but for the denial of due process, the evidence of post-contract damages was irrelevant, *see* Fed. R. Evid. 104(b), and the front-pay award was improper, whether consented to or not. We recognize that the Seventh Circuit has allowed a defendant to consent implicitly to a jury award of front pay in a traditional discrimination suit. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500-01 (7th Cir. 2000). But in these specific circumstances, we think the partial dissent expands consent on one issue too far into uncharted legal territory. The school district and Jackson's failure to object to irrelevant evidence did not also approve the doubly novel idea that the jury could award front pay on a due-process claim.

-9-

agreement with their attorneys and (2) that the award was based on improperly block-billed records.

The school district and Jackson argue that in determining attorney's fees, the district court improperly awarded Nassar and Smith's lead counsel $375 per hour, rather than his usual rate of $250 per hour, solely because counsel worked on contingency. *See Newhouse*, 110 F.3d at 644 ("[A]n enhancement above the lodestar fee for contingency is not permitted."). Though the school district and Jackson did not raise the issue in the district court, they "could not anticipate" this outcome, "which the district court introduced in its order." *United States v. Hurt*, 676 F.3d 649, 652-53 (8th Cir. 2012). As such, they did not waive the issue. *Id.* But they are wrong on the merits. The district court explicitly acknowledged that it could not enhance the fee award solely because of a contingent fee agreement. Rather, it explained that it enhanced the rate of Nassar and Smith's lead counsel specifically because of his experience and his "superior legal and advocacy skills" in the case. The district court thus did not abuse its discretion as the school district and Jackson have argued.

The school district and Jackson also extrapolate from our general rule that "[i]nadequate documentation may warrant a reduced fee." *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). They contend that the court should have reduced the award because the time entries of Nassar and Smith's attorneys were "block-billed, preventing meaningful analysis of the time spent on each discrete task." As our sister circuit has noted, the district court's "superior understanding of the litigation" cautions against "appellate review of minutia[e]." *Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) (quoting *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995)). We again find no abuse of discretion.

Nonetheless, we note that "the results obtained" is one factor relevant to a court's calculation of fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Thus, though we affirm the fee award with respect to the arguments raised here, we vacate and remand for reconsideration in light of our holding vacating Nassar's $340,000 award. *See Quigley v. Winter*, 598 F.3d 938, 958 n.7 (8th Cir. 2010) (noting "that the usual procedure is to remand any further consideration of an attorney fee award to the district court"). We leave alteration of the fee, if any, to the sound discretion of the district court.

III.

For the reasons discussed, we affirm in part and vacate in part, remanding for further proceedings not inconsistent with this opinion.

BYE, Circuit Judge, concurring in part and dissenting in part.

I disagree the school district and Jackson did not waive their ability to challenge the $340,000 award to Nassar on his due-process claim. Instead, I believe the jury properly considered the evidence presented within the provided jury instructions. I therefore respectfully dissent from Part II.B. of the decision reversing the district court. I concur in all other aspects of the majority opinion.

First, the school district and Jackson allowed Dr. Ralph Scott to testify about Nassar's future income and fringe benefit losses without an appropriate objection or limitation. Although counsel for the school district and Jackson posed an objection, the objection pertained to Dr. Scott's offering of a narrative rather than Dr. Scott's ability to offer testimony regarding future losses. Instead, counsel indicated he

realized Dr. Scott was an expert and was "allowed to give his testimony." Appellants's App. 233. "Without an objection and a proper request for relief, [a] matter is waived and will receive no consideration on appeal absent plain error." McKnight ex rel. Ludwig v. Johnson Controls, Inc., 36 F.3d 1396, 1407 (8th Cir. 1994) (internal quotation marks and citation omitted). The total amount to which Dr. Scott testified, including both past and future income and fringe benefits losses, exceeded $340,000, and neither the school district nor Jackson presented any evidence contradicting these amounts.

Further, even though front pay, which Nassar argues is synonymous with future losses, may be awarded by the district court in its discretion, see Mathieu v. Gopher News Co., 273 F.3d 769, 778 (8th Cir. 2001), the school district and Jackson consented to its consideration by the jury by failing to object to Dr. Scott's testimony. See Whiting v. Jackson State Univ., 616 F.2d 116, 123 (5th Cir. 1980) ("By failing to object, the parties agreed that the jury's verdict on the claims for equitable relief was to have the same effect as if a right to a jury trial existed."); see also Broadnax v. City of New Haven, 415 F.3d 265, 272 (2d Cir. 2005) ("[W]hen a party demands a jury consideration of lost wages . . . and the party's opponent fails to object, [Federal Rule of Civil Procedure] 39(c) permits the district court to submit the lost wages issue for a non-advisory jury determination."); Pals v. Schepel Buick & GMC Truck, Inc., 220 F.3d 495, 501 (7th Cir. 2000) (finding the parties consented to the jury deciding front pay because neither party objected, resulting in jury consideration of the issue under Rule 39(c) and an implied consent to amend the pleadings under Federal Rule of Civil Procedure 15(b)); Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 52 (3d Cir. 1989) (holding that where both parties "requested a jury trial and the subject of an advisory jury was never mentioned at any time during the proceedings, [the plaintiff] and [the defendant] must be deemed to have consented to a trial by a nonadvisory jury under Rule 39(c)"). Additionally, "having juries calculate lost wages requires no special competence or authority belonging solely to

the court." Broadnax, 415 F.3d at 272. I further "find sensible the proposition that where a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence may be deemed 'consent' under Rule 39(c)." Id. Accordingly, contrary to the majority's determination, ante at 9, mutual implied consent by Nassar, the school district, and Jackson supports the jury's authority to resolve the issue of front pay which would normally be decided by the court. See Pals, 220 F.3d at 501. The school district and Jackson also failed to make any arguments or cite case law standing for the proposition that front pay is not a remedy available to Nassar.

The jury, thereafter, contrary to the school district and Jackson's argument, properly applied the jury instructions to the evidence which was presented. See CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009) ("In those cases, as in all cases, juries are presumed to follow the court's instructions."). Although the majority cites to an instruction the district court provided to the jury, the language cited is only an excerpt of the instruction. See ante at 7. Instead, the instruction broadly states the jury must award Nassar an amount of money for *any damages* he sustained as a result of the constitutional violation. Appellants's App. 94. It then provides the award should merely put Nassar in no better position than he would have had if the school district had provided him a hearing. Id. Absent is any limitation as to the specific kinds of damages the jury may award or the time period over which those damages may be awarded.[5] Although the instruction next provides an element of damages to consider, it does not direct the jury to make this element its sole consideration for

---

[5]Although the instruction later provided a time limitation to the amount of wages and fringe benefits which the jury could have awarded, the jury found the school district failed to carry its burden to make the time limitation applicable. See Appellants's App. 78, 94-95. The school district and Jackson do not appeal this finding.

damages.  Id.  Additionally, the element itself provides a broader consideration than the school district and Jackson argue, directing the jury to consider the wages and fringe benefits which Nassar would have earned in his *employment* with the school district instead of those wages and fringe benefits which remained based on his contract.  Id.

The plain language of the instruction as a whole therefore refutes the school district and Jackson's argument that "the measure of [Nassar's] damages was the amount of wages and fringe benefits remaining on his contract at the time of his termination."  Appellants's Br. 37.  A reasonable jury could read this instruction and conclude Nassar's damages award extended beyond the wages and fringe benefits remaining under the contract.  If the school district and Nassar believed damages should have been awarded on this narrow basis, an objection to the instruction was warranted.  Because they failed to object, they waived their ability to now argue the jury improperly applied the jury instructions on this basis.  See Niemiec v. Union Pac. R.R. Co., 449 F.3d 854, 857-58 (8th Cir. 2006) ("A party's failure to object to jury instructions results in a waiver of that objection, absent a showing of plain error.").  I further conclude there was no plain error in this case.  See id. (finding plain error, "especially in the civil context . . . must result in a miscarriage of justice in order to compel reversal") (internal quotation marks and citation omitted).

For these reasons, I would find the school district and Jackson waived their ability to challenge the $340,000 award and would affirm.

_____