# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3596

_____

Estate of Joyce Rosamond Petersen, Deceased

*Plaintiff - Appellee*

v.

William E. Bitters, doing business as United Financial Information Services, doing business as United Financial Services

*Defendant - Appellant*

John L. Henry

*Defendant*

_____

No. 18-3600

_____

Estate of Joyce Rosamond Petersen, Deceased

*Plaintiff - Appellant*

v.

Robert W. Boland, Jr.; William E. Bitters; John L. Henry

*Defendants - Appellees*

_____

Appeals from United States District Court

_____

Submitted: November 14, 2019
Filed: April 3, 2020
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

KELLY, Circuit Judge.

This action stems from an unpaid loan. After a seven-day jury trial, the district court[1] entered a $356,619.30 judgment in favor of the estate of Joyce Rosamond Petersen and against William E. Bitters and John L. Henry. The estate and Bitters filed these cross-appeals challenging various rulings by the district court. We affirm.

## I. Background

William E. Bitters was a financial advisor to Joyce Petersen and her husband for many years. He advised Petersen to withdraw $150,000 from her annuities and to loan it to another client of his named John L. Henry. Petersen followed this advice and, in February 2008, she made Henry a 12-month, $150,000 loan, with the option of a one-time renewal. Henry promised to repay the loan plus 11% interest compounded on an annual basis. However, he never made any payments.

Petersen passed away in October 2013, and her estate filed this lawsuit on December 1, 2014. The estate's amended complaint asserted ten claims against Henry, Bitters, and Robert Boland, who the estate alleged was "jointly and severally

_____

[1]The Honorable Robert F. Rossiter, United States District Judge for the District of Nebraska.

-2-

liable for Bitters's misconduct" as Bitters's business partner. The district court dismissed several of the claims against Henry and Bitters before trial. It also granted summary judgment to Boland, finding no evidence of a partnership between him and Bitters. After these rulings, the only claims that remained for trial were claims against Henry and Bitters for fraud, breach of contract, and breach of the implied duty of good faith and fair dealing, and claims against Bitters for breach of fiduciary duty and negligence.

During the trial, Bitters discovered that the estate had agreed to dismiss Henry from the lawsuit in exchange for $1 and his "truthful" testimony at trial. Bitters moved for a mistrial. The district court stated that it was "very, very concerned" about the undisclosed agreement, and it allowed the agreement to be admitted into evidence and used to cross-examine Henry. However, the district court denied the motion for a mistrial, reasoning that Bitters had not been prejudiced by Henry's participation in the case and that cross-examination was an effective remedy.

At trial, Petersen's children testified that Petersen and Bitters exchanged approximately 150 phone calls between 2009 and 2013. During these conversations, Petersen asked Bitters when the loan would be repaid and Bitters responded that "he was still working with Mr. Henry and that he was concerned that if [Petersen] pushed too much or put too much pressure on him that Mr. Henry would claim bankruptcy and that she wouldn't get anything." Petersen's accountant similarly testified that, in April 2013, Bitters told her that "he was trying to collect the finances from Mr. Henry and that if he put too much pressure on Mr. Henry . . . Mr. Henry would file for bankruptcy and [Petersen] would not receive any money." Clarence and Valora Nelson also testified that Bitters advised them to loan $200,000 to Henry around the same time as Petersen. Their loan also was never repaid.

Henry testified that Bitters tried to sell him a life-insurance policy in 2008. Henry initially rejected the policy, and Bitters asked whether he would reconsider if

Bitters "could secure the funds . . . through [a] private individual." Henry agreed, and Bitters secured the $150,000 loan from Petersen. Henry testified that, about a year later, he decided not to renew the life-insurance policy and to repay the note, but Bitters ultimately convinced him to extend the note rather than repay it and to use the money to renew the policy. Henry testified that he did not have any contact with Bitters after 2009, and that Bitters never asked him about repaying the note.

Bitters conceded that he advised Petersen to make the loan to Henry and that he sold Henry a life-insurance policy, for which Bitters received a 25% commission. But Bitters denied ever telling Henry not to repay the loan. He testified that he went to Henry's office approximately eight to ten times around the time the note was due and instructed Henry to repay the loan, and that Henry told him, "I'll take care of it." Bitters stated that he told Petersen, "I'm concerned if we push [Henry] too hard, from what I've been told, he may claim bankruptcy, and then we wouldn't get anything."

The estate's expert testified that, as a Certified Financial Planner, Bitters owed fiduciary duties to his clients and was required to comply with standards imposed by the Board of Certified Financial Planners. The expert testified that Bitters breached these duties by not documenting various aspects of the transaction, by making inadequate disclosures to Petersen, and by failing to act in an even-handed manner between his two clients. The expert also testified that the amount of the note plus interest through the trial was $356,619.30.

At the close of evidence, Bitters moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. The district court granted the motion in part and denied it in part. The court submitted to the jury only the estate's claim against Henry for breach of contract and its claims against Bitters for fraud and breach of fiduciary duty. The court also limited the claims against Bitters based on Nebraska's four-year limitations period for fraud and negligence claims. See Neb. Rev. Stat. § 25-207. It held that (1) insofar as the estate's claims were based on

-4-

Bitters's conduct in 2008, they fell outside of the four-year limitations period and were time-barred; (2) insofar as the claims were based on the testimony that Bitters persuaded Henry not to repay the loan in 2009, a reasonable jury could decide that the limitations period was tolled under doctrine of fraudulent concealment; and (3) insofar as the claims were based on statements that Bitters made to Petersen between 2011 and 2013, they were within the limitations period.

The district court instructed the jury in accordance with these rulings. It rejected the estate's request for an instruction on pain-and-suffering damages, concluding that there was not "any competent evidence" of non-monetary damages. While the jury deliberated, the estate moved to dismiss Henry from the lawsuit. The district court denied the motion because it was filed during jury deliberations and appeared to be a product of "gamesmanship."

The jury found Henry liable for breach of contract in the amount of $356,619.30. It also found Bitters liable for fraud and breach of fiduciary duty in the amount of $356,619.30. The district court decided that it was "beyond debate" that the jury only awarded damages for the non-payment of the loan, and it declined to permit double recovery for this single, indivisible injury. Accordingly, the court modified the jury's verdict to make Henry and Bitters jointly and severally liable for a single $356,619.30 judgment.

Bitters and the estate filed post-trial motions under Rules 59 and 60 of the Federal Rules of Civil Procedure. Bitters argued that the estate's claims were barred by the statute of limitations, that the estate had not proven that it was injured by him, and that he had not received a fair trial. The estate challenged the district court's modification of the jury's award, its refusal to instruct the jury on pain-and-suffering damages, its dismissal of the estate's negligence claim, and its grant of summary judgment to Boland. The district court denied the parties' motions. These cross-appeals followed.

## II.  Standards of Review

The parties challenge the district court's rulings on their motions for summary judgment, for judgment as a matter of law, for a new trial, to amend the judgment, and for relief from the judgment.  They also challenge the district court's jury instructions.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  We review these matters de novo, applying the same standard as the district court, viewing the facts in the light most favorable to the nonmoving party, and granting the nonmoving party all reasonable inferences.  See Kinserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000).

We review the denial of a motion for a new trial for "a clear abuse of discretion."  Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000).  "The key question is whether a new trial should have been granted to avoid a miscarriage of justice."  Id. (citation omitted).  We also review the denial of motions to alter or amend the judgment, or for relief from the judgment, for an abuse of discretion.  Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1036 (8th Cir. 2007).  We further review the district court's jury instructions for an abuse of discretion, considering only whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law, and reversing only where the error affects the parties' substantial rights.  Zebley v. Heartland Indus. of Dawson, Inc., 625 F.3d 449, 455 (8th Cir. 2010).

## III.  Analysis

### A. Bitters's Appeal

Bitters asserts that the district court committed three errors in denying his motion for judgment as a matter of law and instructing the jury. First, he argues that the estate's fraud and breach-of-fiduciary-duty claims were time-barred under Nebraska's two-year limitations period for claims of "professional negligence," Neb. Rev. Stat. § 25-222, and that the district court erred by instead instructing the jury to apply the four-year limitations period for claims of negligence and fraud, Neb. Rev. Stat. § 25-207.

We conclude that any potential error did not affect Bitters's substantial rights. See Zebley, 625 F.3d at 455. The district court limited the fraud claim against Bitters to "the estate's claim that William E. Bitters represented to Ms. Petersen that he would seek repayment from John L. Henry after the loan became due and did not do so." And it limited the breach-of-fiduciary-duty claim against Bitters to "(1) the estate's claim that William E. Bitters told John L. Henry not to repay the loan in February of 2009 and [to] extend the term of the loan for one year, and (2) the estate's claim that William E. Bitters represented to Ms. Petersen that he would seek repayment from John L. Henry after the loan became due and did not do so."

The court found that, insofar as these claims were based on the allegation that Bitters told Henry not to repay the loan, "a reasonable jury [could] conclude that fraudulent concealment applies" and thus that the limitations period was tolled. The court correctly instructed the jury on the elements of fraudulent concealment under Nebraska law. See Andres v. McNeil Co., 707 N.W.2d 777, 787 (Neb. 2005) (stating the elements of fraudulent concealment). The court also found that, insofar as these claims were based on the allegation that Bitters represented that he would seek repayment from Henry but did not do so, they stemmed from conduct that continued until 2013 and thus fell within both the two-year and four-year limitations periods. See Anthony K. ex rel. Ashley K. v. Neb. Dep't of Health & Human Servs.,

855 N.W.2d 788, 800–01 (Neb. 2014) (explaining the continuing tort doctrine). These findings are supported by the record, and Bitters cannot show that he was prejudiced by the district court's instructions to the jury.

Second, Bitters argues that the district court erred by not deciding, as a matter of law, that the estate failed to prove any damages attributable to him. He describes the estate's claims against him as alleging "fraud in the inducement" and argues that such a claim would only warrant damages that resulted from Petersen entering into the note and not damages from Henry's subsequent non-payment. Further, he asserts that the estate's "fraud-in-the-inducement" claim asked the jury to rescind the note and restore the parties to their original positions, whereas its breach-of-contract claim against Henry asked the jury to affirm the note and award damages for Henry's breach. He contends that these theories of recovery are "inconsistent in the sense that [the estate] cannot logically choose one without renouncing the other," and that the estate thus should have been required to make an election of remedies. See Genetti v. Caterpillar, Inc., 621 N.W.2d 529, 546 (Neb. 2001).

We are not persuaded. Insofar as the estate's claims against Bitters rested on a theory of fraud in the inducement, the district court dismissed them on statute-of-limitations grounds. The theories that were presented to the jury were that Bitters told Henry not to repay the loan and that Bitters told Petersen that he would seek repayment from Henry and failed to do so. These claims were consistent with the estate's breach-of-contract claim against Henry in that each claim sought damages for the non-payment of the loan. It was permissible for the jury to consider these alternative theories of recovery so long as the district court allowed only "one satisfaction [to be] had" for this single, indivisible injury. See id.

Third, Bitters argues that the estate was not the real party in interest because the money Petersen used to fund the loan came from her annuities, which were non-probate assets that would pass to her children rather than to her estate. The

district court rejected this argument because Bitters made it for the first time in the post-trial renewal of his Rule 50(a) motion for judgment as a matter of law. See Fed. R. Civ. P. 50(b). We agree that Bitters failed to timely raise this argument and decline to consider it for the same reason as the district court. See Nassar v. Jackson, 779 F.3d 547, 551 (8th Cir. 2015) ("A court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion.").

Bitters also challenges the district court's denial of his motion for a new trial. He argues that various rulings regarding the evidence, testimony, and arguments allowed at trial, and opposing counsel's "repeated and contumacious misconduct," deprived him of a fair trial. The district court carefully reviewed each of these arguments and decided that, although some of Bitters's concerns were "well-founded, the trial was not unfair." We give "great deference" to the district court's judgment, and we are not convinced that the court abused its discretion in deciding that a new trial was not necessary to prevent a miscarriage of justice. See Belk, 228 F.3d at 878.

## B. The Estate's Appeal

The estate asserts that the district court committed four errors. First, it argues that the district court impermissibly "halved" its recovery by holding Bitters and Henry jointly and severally liable for the jury's award of $356,619.30 in damages. We disagree. The district court found that it was "beyond debate" that the only damages awarded by the jury were for the non-payment of the note. Nebraska law provides that "a party may not have double recovery for a single injury or be made more than whole by compensation which exceeds the actual damages sustained." See Tolliver v. Visiting Nurse Ass'n of Midlands, 771 N.W.2d 908, 916 (Neb. 2009). The district court had "a duty to make the . . . damages award conform to the law," Corpus v. Bennett, 430 F.3d 912, 916 (8th Cir. 2005), and did not abuse its discretion by preventing the estate from recovering twice for a single, indivisible injury, see

Genetti, 621 N.W.2d at 546 ("Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had.").

Second, the estate argues that the district court erred by not instructing the jury on pain-and-suffering damages. There was testimony at trial that Petersen was anxious, nervous, agitated, and worried about the non-payment of the loan. But the district court decided that, in the absence of more concrete testimony about the cause and extent of these damages, and because Petersen also suffered from other medical issues, there was "insufficient evidence" to submit this issue to the jury. Under Nebraska law, "a plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages." Pribil v. Koinzan, 665 N.W.2d 567, 572 (Neb. 2003). We agree with the district court's conclusion that the evidence was insufficient to provide the jury with a reasonably certain basis for calculating pain-and-suffering damages.

Third, the estate challenges the district court's decision, at the Rule 50 hearing, to dismiss its negligence claim as "duplicative" of its breach-of-fiduciary duty claim. In dismissing this claim, the district court correctly stated that, under Nebraska law, the elements of negligence and breach of fiduciary duty are the same—duty, breach, causation, and damages. McFadden Ranch, Inc. v. McFadden, 807 N.W.2d 785, 789 (Neb. Ct. App. 2011). The estate argues that this does not necessarily mean that the claims are duplicative because "[a] fiduciary duty arises out of a confidential relationship," whereas negligence can occur in the absence of such a relationship. See Gonzalez v. Union Pacific R.R. Co., 803 N.W.2d 424, 446 (Neb. 2011). We agree that these claims are not always redundant. But here, the estate asserted the same duty, breach, causation, and damages as to each claim. Because it was clear at the Rule 50 hearing that these claims were identical, the district court did not err by dismissing the estate's negligence claim. See Renner v. Wurdeman, 434 N.W.2d 536, 542 (Neb. 1989) (affirming the dismissal of a redundant claim).

-10-

Finally, the estate challenges the district court's grant of summary judgment to Robert Boland. The estate's claims against Boland were based on its assertion that Boland entered into a partnership with Bitters and was "jointly and severally liable for Bitters's misconduct." It provided evidence that Boland had a profile on Bitters's website, that the two had "collaborated on speaking engagements, made referrals, and exchanged financial and legal ideas over the years," and that the two wrote articles together and sometimes referred work to each other. The district court concluded that this failed to raise a genuine dispute of material fact as to whether Bitters and Boland had entered into a partnership because there was "no evidence of co-ownership." See Neb. Rev. Stat. § 67-410(1) ("[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership . . . ."); In re KeyTronics, 744 N.W.2d 425, 441 (Neb. 2008) ("It is co-ownership that distinguishes partnerships from other commercial relationships . . . ."). We agree with the district court's analysis. See In re KeyTronics, 744 N.W.2d at 441 (listing several "objective indicia of co-ownership" that are not present here).

## IV. Conclusion

For the foregoing reasons, we affirm.

_____

-11-